# 13-228-CR(L)
## 13-3459-CR(CON)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

LARRY SEABROOK,

*Defendant-Appellant.*

———————————

*On Appeal from the United States District Court*
*for the Southern District of New York (New York City)*

## APPENDIX
## VOLUME II OF II
### Pages A209 to A437

Michael Alexander Levy,
  Assistant United States Attorney
UNITED STATES ATTORNEY'S OFFICE
  FOR THE SOUTHERN DISTRICT
  OF NEW YORK
*Attorneys for Appellee*
One St. Andrew's Plaza
New York, New York 10007
212-637-2346

RYAN THOMAS TRUSKOSKI, ESQ.
RYAN THOMAS TRUSKOSKI, P.A.
*Attorney for Defendant-Appellant*
205 Wildcat Hill Road
Harwinton, Connecticut 06791
860-294-2806

# Table of Contents

## Volume I

District Court Docket Entries ................................................................ A1

Superseding Indictment ...................................................................... A27

Excerpt from the Transcript of Proceedings held before the
    Honorable Deborah A. Batts on June 19, 2012
    (pp. 1-3, 231-235) ........................................................................ A78

Declaration of Edward D. Wilford, for Defendant, in Support of
    Motion for a New Trial, dated August 14, 2012............................. A86

Memorandum of Law in Support of Post-Trial Motions for
    Defendant Larry Seabrook, dated August 14, 2012........................ A88

Government's Response in Opposition to Defendant Larry
    Seabrook's Post-Trial Motions for a New Trial and for a
    Judgment of Acquittal, dated August 29, 2012 .............................. A97

Order of the Honorable Deborah A. Batts, dated September 4, 2012 ... A121

Sentencing Submission of The United States of America,
    dated November 13, 2012............................................................... A130

Sentencing Memorandum (Letter) of Defendant,
    dated November 26, 2012............................................................... A142

Response of the United States of America to Defendant Larry
    Seabrook's Sentencing Submission, dated November 29, 2012 ..... A173

Order of the Honorable Deborah A. Batts,
    dated November 29, 2012............................................................... A177

Government's Sentencing Submission Regarding Restitution,
    dated December 13, 2012 .............................................................. A178

# **Table of Contents**
## **(continued)**

**Page**

Exhibit A to Government Sentencing Submission - Spreadsheet of Payments to Friends and Family ..................... A187

Defendant's Reply Memorandum Regarding Restitution, dated December 20, 2012 ............................................... A190

Second Memorandum of Law in Reply to the Government's Memorandum Seeking Restitution, dated December 20, 2012 ...... A202

Order of the Honorable Deborah A. Batts, dated December 20, 2012 ............................................... A208

## **Volume II**

Defendant's Exhibit A to Sentencing Memorandum - Letters Attesting to Defendant's Character .............................. A209

Defendant's Exhibit B to Sentencing Memorandum - Letters Attesting to Defendant's Character .............................. A225

Defendant's Exhibit C to Sentencing Memorandum - Letter Attesting to Defendant's Character ............................... A230

Transcript of Sentencing before the Honorable Deborah A. Batts on January 8, 2013 ............................................ A234

Judgment of the United States District Court, Southern District of New York, dated January 17, 2013, with Annexed Order of Forfeiture of the Honorable Deborah A. Batts, dated January 8, 2013 ................................................ A266

Notice of Appeal, filed January 11, 2013 ............................................ A281

Order to Show Cause to Stay Execution of Sentence Pending Defendant's Motion for a New Trial, dated March 1, 2013 ........... A282

**Table of Contents**
**(continued)**

Affirmation of Fitzmore H. Harris, for Defendant, in Support of
    Order to Show Cause, dated March 1, 2013 ................................... A284

Affidavit of Oliver Seabrook, sworn to February 27, 2013 ................. A286

Affidavit of Donald Frangipani, sworn to February 22, 2013.............. A293

    Exhibit 1 to Seabrook Affidavit -
    *Curriculum Vitae* of Donald Frangipani ................................. A298

    Exhibit 2 to Seabrook Affidavit -
    Photocopies of Checks ........................................................... A307

    Exhibit 3 to Seabrook Affidavit -
    Timesheets.............................................................................. A322

    Exhibit 4 to Seabrook Affidavit -
    Excerpts from Trial Transcript (pp. 1350-1351, 1418)............. A338

    Exhibit 5 to Seabrook Affidavit -
    Excerpts from Trial Transcript (pp. 362-363)........................ A342

    Exhibit 6 to Seabrook Affidavit -
    Bank Statement ..................................................................... A346

    Exhibit 7 to Seabrook Affidavit -
    Judgment of the United States District Court, Southern
    District of New York, dated January 17, 2013, with
    Annexed Order of Forfeiture of the Honorable Deborah A.
    Batts, dated January 8, 2013.................................................... A347

Memorandum of Law, dated February 28, 2013.................................. A363

Government's Memorandum in Opposition to Defendant's Second
    Post-Trial Motion for a New Trial, dated March 21, 2013............. A387

# Table of Contents
## (continued)

Exhibit A to Memorandum -
Summary of NEBRC Disbursements Related to the FDNY
Diversity Initiative..................................................................... A395

Exhibit B to Memorandum -
Spreadsheet on Agreement X05-960....................................... A396

Exhibit C to Memorandum -
Spreadsheet on Agreement X06-960....................................... A397

Exhibit D to Memorandum -
Pay-O-Matic Check Cashing Corp. Customer Check
History Report, dated Monday, February 1, 2010.................... A398

Exhibit E to Memorandum -
Customer Registration of Arlene J. Carden Duren at Pay-
O-Matic Check Cashing ........................................................... A399

Exhibit F to Memorandum -
Summary of NEBRC Disbursements Related to the Jobs to
Build On ("JTBO") Initiative ................................................... A400

Exhibit G to Memorandum -
Photocopies of Checks ............................................................. A401

Defendant's Reply Memorandum of Law in Further Support of
    Order to Show Cause, dated March 28, 2013 ................................. A405

Memorandum and Order of the Honorable Deborah A. Batts,
    dated August 26, 2013 ................................................................... A416

Notice of Appeal, dated September 5, 2013........................................... A436

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

       -v-                      10 Cr. 87 (DAB)

LARRY SEABROOK,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**DEFENDANT'S EXHIBIT A TO SENTENCING MEMORANDUM**

ANTHONY L. RICCO
20 Vesey Street Suite 400
New York, New York 10007
(212) 791-3919
tonyricco@aol.com

EDWARD D. WILFORD
20 Vesey Street Suite 400
New York, New York 10007
(212) 528-2741
edwardwilford@aol.com

Attorneys for Defendant

Vernell W. Robinson
3620 Clyde Drive
Jacksonville, Florida 32208
December 18, 2012

Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moyniham, Courthouse
500 Pearl Street
New York, New York 10007

Honorable Deborah A. Batts:

It is a privilege for me, Vernell W. Robinson, to write a character letter for Larry Seabrook. I have known him for over fifty (50) years. He has always been honest, loyal and respectful. He has always been devoted to his family and friends, and has been steadfast in task he has undertaken. He has always demonstrated a warm hearted and deep concern for others.

Larry has always exemplified high standards and ideals. He has always demonstrated confidence, integrity, sincerity, thoughtfulness, kindness and outstanding organizational skills.

Larry was responsible for the 1958 Matthew W. Gilbert High School Panthers Football team to receive the recognition it deserved. The team was undefeated in state competition with a record of 11- 0 to become the first black high school state championship team in Florida.

It is my firm belief that Larry is an asset to his Community.

Respectfully,

*Vernell W. Robinson*
Vernell W. Robinson
Guidance Counselor (Retired)
Duval County Schools

# A211

December 19, 2012

Honorable Deborah Batts
United States District Judge
Daniel Patrick Moyniham Courthouse
500 Pearl Street
New York, New York 10007

Dear Judge Batts,

It is an honor an pleasure to write a letter for Larry Seabrook. I have known him for 23 years and he is an uncle, and more importantly, a father figure. I am a recent graduate of Florida Agricultural and Mechanical University's School of Business and Industry, when I conveyed to my uncle my dream of become a designed his response was "Excel and reach your dreams and I will do everything in my power to help you succeed." He has done that. But what inspires me most is that as I walk the streets of the Bronx, I have come into contact with numerous young men who received the same words of motivation from my uncle. That is powerful...that is my Uncle. He lives to inspire, motivate and empower others.

I am grateful that I have lived in New York long enough to have watched my Uncle as he walks the streets and people from all walks of live approach him and share that they believe in him and are praying for him. The people know and believe that my Uncle absolutely cares about his district. Larry Seabrook is a man of many principals and exudes integrity, confidence, loyalty and kindness. It is quite easy for an individual to say these things and not mean them. However, Larry B. Seabrook embodies these intangibles and his track record as an elected official, husband, father, brother, and friend reveals these traits.

There are not a lot of Larry B. Seabrooks in this world and I am extremely fortunate to have had the opportunity to know that there are still people out there who truly care about others.


Please consider my uncle's track record and his honorable service in your deliberations.


Sincerely,

Craig L. Burney

Helen D. Deas
621 W 44th St, Apt 8
Jacksonville, FL 32208-5158

December 18, 2012

Honorable Deborah Batts
United States District Judge
Daniel Patrick Moyniham Courthouse
500 Pearl Street
New York, New York   10007

Dear Judge Batts,

Who is Larry B. Seabrook?  For starters, he is the son of the late Oliver and Helen Seabrook who taught their children that a person's name was the most precious gift that he has and stressed the importance of protecting one's name.  Larry gave untiringly to his constituents and worked hard to prove that he was worthy of respect.  Larry is the son of parents who taught their children that education was knowledge and that knowledge is power.  As such, Larry was obligated to take education seriously and to achieve with levels of excellence.  Larry is the son of the late Oliver and Helen Seabrook who stressed that their children were to treat people with kindness and that every person was due a level of dignity and respect.  Larry Seabrook took that lesson seriously and helped hundreds of people achieve, excel, get on their feet, and become productive citizens.

Mr. Seabrook has been a role model for my son and for my nieces and nephews.  They look up to him because he does not brook disrespect, he models leadership and he provides wise counsel and guidance.

Although Larry is in New York and I am in Florida, I have had the honor of reading about him giving to others through his Christmas gift giving, his Mother's day program and other events.  Giving to others is not a gimmick or a political ploy...this is the true essence of who Mr. Seabrook is.  His sisters and I pray daily that he will be seen for the man that he truly is.  Larry B. Seabrook loves people and he loves New York and has given his all to his constituents and his family.  Please know that the man who will stand before you is a Christian; a husband, and a father who encourages his children to become model citizens. Most importantly, the person who will stand before you is an honest man who has served the citizens of New York well and is deserving of your mercy.

Respectfully submitted,

Helen Deas

Helen D. Deas

# A213



617 Franklin Street
Jacksonville, Florida  32206

December 18, 2012

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear  Honorable Deborah A. Batts:

I am humbled to write this letter on behalf of my brother Mr. Larry B. Seabrook.  I am aware that
a letter can only give a quick snap shop of who a person truly is.  However, I am going to
attempt to paint a picture for you that will be worth a thousand words.  The very first word that
comes to mind when I think of Larry is smart.  He is well educated, he loves learning and most
importantly he does everything within his power to make sure that any young person with whom
he comes in contact understands the importance of education.  He has used his education and
knowledge to help others.  There are so many young people who have college degrees because
Larry encouraged them, supported them and assisted them in any way that he could.

The second word that comes to mind when I think of Larry is honest.  He is a good and honest
man who goes above and beyond the call of duty to help others.  He has been the father figure
for each of my nieces and nephews who has lost a father due to death or divorce.  Those kids
look up to him because they know the example that he has set through the way that he has lived
his life.

Larry is also a Christian who walks the walk and talks the talk.  He would give an individual his
last dime and I can say that with certainty because I have witnessed him do so on many
occasions.  If you are familiar with the Biblical depiction of the 'Good Samaritan' in Luke
Chapter 10, then Larry would be the individual who sees the stranger lying alongside the road, he
would be the person who cares for the stranger and makes sure that the stranger gets on his feet.
Larry has six sisters and we have all told him on numerous occasions that he is 'too nice' and
that there are people out there who would take his kindness for granted and misuse him.  Larry
pays that kind of suggestion no attention because he truly believes that the essence of leadership
is service to mankind.

Certainly, you might think that by virtue of the fact that Mr. Seabrook is my brother I am seeing
him through rose colored glasses and overstating this man's generous nature.  I can assure you
that I am not.  I am proud that he is my brother and even more proud of who he is as a man.

Dorothy Johnson

# A214

# *Matthew W. Gilbert*
## *Grand Alumni Reunion Committee*



December 18, 2012

Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Court House
500 Pearl Street
New York, NY 10007-1312

Re: Mr. Larry B. Seabrook

Dear Judge Batts:

As the 2012 chairman of the Matthew W. Gilbert Grand Reunion Committee, I have been asked to send you a letter of support for Mr. Larry B. Seabrook. I am pleased to comply with the full committee's request and hope that this correspondence be taken into consideration as you deliberate upon the sentencing of Mr. Seabrook.

For the past fifteen years, Matthew W. Gilbert Junior-Senior High School has had an Annual Grand Reunion of its alumni and friends. Mr. Seabrook, an alumnus, has been very instrumental in the planning of this significant cultural and historical event and he has supported this event over the years by sharing his business expertise. This annual event has generated funds for students to pursue their college endeavors. Mr. Seabrook's financial contributions along with other alumni contributions has supported over 20 students' attending a post-secondary institution.

Mr. Seabrook has always been supportive of this committee's educational and community initiatives in spite of him being away in New York. His sense of Jacksonville Community is valued by this committee and serves as a living testimony to all alumni that move away from their Jacksonville roots to give back in service and support.

In closing, I urge you consider the significant contributions that Mr. Larry B. Seabrook has made to his high school alma mater and the students whose educational opportunities that have been enhanced by his financial support as well as support to this committee.

Thanks in advance for your consideration and I pray that you will extend mercy to Mr. Seabrook in your final sentencing.

Sincerely,

Kenneth L. Manuel

*P.O. Box 9951*
*Jacksonville, FL 32208*

# A215

## Mrs. Jackie Lucas Surrency
7929 Merrill Road # 712
Jacksonville, Florida 32277-6508
904-744-1053

Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Court House
500 Pearl Street
New York, NY 10007-1312

Re: Character Letter for Mr. Larry B. Seabrook

Dear Judge Batts:

It is my understanding that Mr. Larry B. Seabrook will be appearing before you for sentencing within the next few weeks. I have been asked by Mr. Seabrook to submit a character letter and I am pleased to comply with his request.

I have known Larry for over fifteen years. He and I are both alumni of Matthew W. Gilbert High School located in Jacksonville, FL. And, for the past fifteen years Mr. Seabrook has been instrumental and supportive of Gilbert Grand Reunion. He was very instrumental in recognizing the school's 1958 State Championship Football Team who was not recognize in 1958 due to a dual educational system. Mr. Seabrook worked with members of the Florida Legislature to ensure that these players were recognized as State Champions. All of the comments from the players on that team validates that this recognition would not have happened if it was not Mr. Seabrook intervention and support.

In the years that I have interacted with Mr. Seabrook, I have known him to be gentleman and a special man of character. Larry has always displayed a Christian attitude and demonstrated a passion toward helping people. His honesty and integrity in dealing with our Grand Reunion Committee will always be remembered and cherished. Although Mr. Seabrook was a member of the New York Legislature, he never forgot his sense of Jacksonville community and his actions and behaviors always enhanced any project or venture that his high school or the eastside community initiated.

Judge Batts, as you prepare to deliberate the sentencing of Mr. Seabrook; I trust that you will take under consideration of his significant contributions and support that he rendered to his high school and to the Jacksonville, FL eastside community. I pray that you will take into consideration that Mr. Seabrook has a lot of years left in his life and that he has the ability and the skills to help others.

Thanks in advance for your consideration and mercy.

Sincerely,

*Mrs. Jackie Lucas Surrency*

Mrs. Jackie Lucas Surrency, Chairman
2008 Matthew W. Gilbert Grand Reunion

JLS:twb

Honorable Deborah A. Batts
United States District Judge Daniel Patrick Moyniham Courthouse
500 Pearl Street
New York, NY 10007

Dear: Honorable Deborah A. Batts:

How do you describe someone's character to the next person so that they see the caring and concerned individual that you've known for 44 years?

Is it the person who has supported the Library of Matthew W. Gilbert High School for the past 25 years and still supports the Library although it's now an elementary school? Maybe   it's the individual that volunteered to be the Master of Ceremonies for his Alumni's Grand Reunion for so many years I've lost count.

In today's world it is very hard to find that individual that takes what one would consider little or nothing to speak of and make a Big Deal out of it…. For example it was a Big Deal to this person and very important to make sure that his Elders who go by the group name 'Old Timers' are not only invited but also have special seating at the Alumni Grand Reunion each year,   It may not have been a BIG Deal to the football players of his Alumni who 50 yrs ago fought long and hard to win a Championship but were never recognized. It may have taken him until 2008; his team finally received the recognition they earned and were written about front page of the Sports section in the Florida Times Union newspaper.

I could go on and on sharing just some of the things that Mr. Larry B. Seabrook has selfishly gone out of his way to either make happen or helped to make happen but that's not necessary; his actions speak for him…. loud and clear.

Sincerely


Mrs. Veliria Shuford
Former Classmate

**Priscilla S. Jenkins**
335 Poplar Way SW
Atlanta, GA 30331

December 18, 2012

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear  Honorable Deborah A. Batts:

It is with the utmost humility that I write this letter regarding the character of my brother, Larry Seabrook. Throughout my life I have had the privilege of watching Larry Seabrook develop into a nurturing and caring professional. As a first generation college graduate he pursued his long term educational goal of attending and graduating from Law School.

Larry Seabrook has served the community well, providing equipment for special needs students at a local school in his district. He has coordinated programs honoring seniors, hosting Mother's and Father's Day events, and providing Christmas gifts for students in his district.

As a brother he has served as a sounding board, confident, leader in organizing family reunions and other family events. Most importantly, he is a caring Christian man of valor who puts others needs ahead of his own. Since the death of our father, Larry has taken on the leadership role of keeping the family's culture and history alive to represent the honesty and integrity which our family name has always represented.

Larry is a dedicated brother, uncle, and father, currently the youngest of his children is a thirteen year old male, the only male Seabrook heir to continue the Seabrook name. It is important that Larry continues to be at home to raise his son given the plight of black makes needing positive role models and fathers in their lives.

It is with a Sister's heartfelt sincerity and love for my brother that I implore your consideration in reviewing Larry B. Seabrook's case based on the new evidence and grant a new trial before sentencing.

Thank you for your time and consideration.

Respectfully,

*Priscilla S. Jenkins*
Priscilla S. Jenkins

# A218

3730 Soutel Drive Apt. 2110
Jacksonville, Florida 32208

December 18, 2012

**Honorable Deborah A. Batts**
Unites States District Judge
Daniel Patrick Moyniham Courthouse
500 Pearl Street
New York, New York 10007

Re: Larry B. Seabrook

Dear Judge Batts,

I, Harriet Seabrook Jarrett, Retired Registered Nurse and sister of Larry B. Seabrook, am writing on his behalf as a character witness.

I have known him all of his life and watched him live out his dream of being a public servant. He is an honest and upright citizen; always loving, caring and compassionate; always lending a helping hand to anyone in need. He is too trusting perhaps, but a Good Samaritan and Christian.

Please be lenient, merciful and compassionate towards him. He has done outstanding work for the people in his community. He is a gentleman and a scholar; a husband and a father.

I wholeheartedly thank you for your consideration.

May God bless and reward you for your service to mankind.

Yours Truly,

*Harriet S. Jarrett*

**Harriet S. Jarrett**

December 18, 2012

**Honorable Deborah A. Batts**
Unites States District Judge
Daniel Patrick Moyniham Courthouse
500 Pearl Street
New York, New York 10007

Re: **Seabrook, Larry**
**S1, 10 Cr. 87 (DAB)**

**Judge Batts:**

I, Wanda L. Graham, respectfully submit this letter in support of my uncle, Larry Seabrook, in Case No: S1, 10 r. 87 (DAB).

I have known Larry Seabrook all of my life (48 years). He has proven to be a man of integrity, honesty, conviction, compassion and commitment. He has consistently been a solid and unshakable fixture within the Seabrook family, whom nieces, nephews and our children, have long admired, respected and sought to emulate. He has an astounding, disciplining effect upon all of us, particularly the males in our family; many of whom he took under his wing, nurtured and molded into mature, productive, well defined men. I have known him to be an accomplished lawyer, professor and public servant, however, thirty years ago, I had the honor of hearing him speak for the first time and overwhelmed with pride in him, I was forever changed by what I heard, saw and experienced through him.

Larry Seabrook is the most unselfish person I know. He has an incredible sense of trust and belief in other people, as well as, a sincere desire to assist others achieve. He has never shunned his responsibility to continuously improve upon himself and, more importantly, to reach back and help someone else. Larry Seabrook has helped, guided, motivated, lead, developed, supported and facilitated the success of so many, many people. I have personally witnessed him invest in those whom most people have forgotten, don't care about, overlooked and written off. If I could accomplish a small portion of what he has personally and professionally, I would be justified in considering myself to be successful.

For over thirty years, Larry Seabrook has tirelessly served as a role model, mentor, educator and investor/developer of people. Despite his recent experiences within the past two years, even now, he still continues to consider the needs of other people before his own because he is what he does. Larry Seabrook possesses undeniable talents, gifts, influence and experience that he has and can continue to utilize to positively transform lives of children, young people, adults and communities, if granted the opportunity. It is within this context, that I respectfully plead the Court for mercy and leniency in sentencing Larry Seabrook in the aforementioned case on January 8, 2013.

I sincerely thank you for your time and consideration.

Respectfully Submitted,

*Wanda L. Graham*

**Wanda L. Graham,**
9412 Thorn Glen Road
Jacksonville, Florida 32208
(904) 463-6552

**Betty Seabrook Burney**
**5626 International Drive**
**Jacksonville, FL   32208**

December 18, 2012

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear Honorable Deborah A. Batts:

In 2004, I was a candidate for the Duval County School Board.  My brother, Larry Seabrook gave me the following advice; "If you are running for School Board to be a politician then do not run because the School Board does not need a politician...the School Board needs someone who truly cares about kids".  He shared that insight because that is the kind of man that he is.  He truly believes that elected officials were intended to serve.  I watched him serve his constituents for nearly 30 years and I am proud to say that he served his constituents well.

Larry Seabrook cares about young people and wants desperately to keep them from situations that could lead to trouble.  I have personally witnessed his untiring efforts to educate his young constituents on gang prevention and stemming the tide of the school to prison pipeline.  Not many elected officials give of their time and energy so unselfishly as Larry Seabrook.  He and I have had long chats about the support he has provided to many of the schools in his district.  A few years ago a vendor of educational materials met me a conference and was sharing that she had met a Councilman in New York who was truly concerned about the education of the children in his district and that upon visiting two of the schools, the Principals spoke so highly of the Councilman that she decided to personally seek him out.  When she shared with me the name of the Councilman I informed her that I was not surprised and that the gentleman was my brother.

A charge was brought against my brother with regards to a book that I authored which provides letters of advice from teenage inmates, entitled "If These Chains Could Talk".  I never had the opportunity to testify before you, however, I want to take this opportunity to share with you that the funds for that book were not for my personal use; they were for the printing and shipping of hundreds of books that were distributed at a rally for families and children.  Any books that were left over had to be minimal as I know that I personally signed nearly 600 books and gave them out at the rally.  My brother and I were taught to serve and to empower others.  He wanted to stem the school to prison pipeline; not to do anything for personal gain.

I am so proud of my brother and his willingness to stand up for others.  A few years ago he put his neck on the line in order to get large companies to advertise in African American media outlets.  I have personally witnessed him give out toys for Christmas, I have attended his Martin Luther King Jr. celebrations and witnessed him giving to seniors in his district.  Judge Batts, I humbly ask that you take all of this into consideration and have mercy on Larry B. Seabrook.

Respectfully submitted,

# A221

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear Honorable Deborah A. Batts:

My name is Earline Seabrook Floyd.  I am writing this letter on behalf of my brother Larry Seabrook.  Please give Larry a chance to let you know the kind of husband, father, brother and uncle that he truly is.  Larry is not only my brother, he is my true friend.

Larry Seabrook served as a source of inspiration for all of my children.  Most especially, when my husband died, he served as a surrogate father to my son.  This giant of a man has played numerous roles in the lives of our family members.  He is a giving spirit who not only gives to family, he gives to anyone with whom he comes in contact.

I am a Minister who recognizes that Larry Seabrook is a minister to his family man because he practices the adage of giving, loving and sharing.

Thank you Judge for everything that you can do in my brother's behalf.


God Bless You,
Minister Earline Seabrook Floyd

# A222

Bernice Johnson
663 East 234th Street Apt 1
Bronx, New York

December 18, 2012

The Honorable Deborah A. Batts
United States District Judge
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear Honorable Deborah A. Batts,

Man of integrity, fighter for the people and kind-hearted to a fault are all descriptions that define Mr. Larry B. Seabrook. I have lived in Larry Seabrook's district for as long as he has been an elected officials and I have participated in numerous events that he has held for his constituents. I can say with certainty that even those who the Government used as witnesses and provided immunity would have to say that Mr. Seabrook is a man of integrity who showed them nothing but kindness. Every Christmas, many youngsters who probably would not have anything for Christmas could look forward to receiving toys and gifts from Councilman Seabrook. Every Mother's Day women could anticipate that there would be an event in their honor. Dr. Martin Luther King's memory was not only honored by Councilman Seabrook, but he fed hundreds of people as well.

As a fighter for the people I can remember Mr. Seabrook taking a stand when other politicians would not! Schools in the District received funding and had activities only because Mr. Seabrook felt the need to give them funding. I am a proud supporter of Councilman Seabrook and will continue to be a supporter because I know his heart, his commitment and I definitely know that he cares.

Sincerely,

Bernice Johnson

**Roz Calvert**
395 Cedar Drive
East Marion, NY 11939

18 December, 2012

Honorable Deborah A. Batts
Judge, U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York

Dear Judge Batts,

I have been proud to know my friend Larry Seabrook for more than 16 years. Over these years we have met often over the Diaz-Seabrook family dinner table, sharing conversations about politics, music and books and family. Larry's work to serve constituents in the Bronx and always been a large part of the conversation. I remember his excitement about work at Co-op City to support a group of grandparents raising their grandchildren. He was even more thrilled to be able to bring a much needed computer lab to a school in the district. Larry always talked about the importance of the children's sports and civic programs that his office promoted; how critical it is to teach children personal and civic responsibility. I witnessed Larry's constant work to organize many events aimed at increasing voter participation, celebrating civil rights milestones, reducing violence in the district and supporting family life.

The Larry Seabrook I know is a respected leader and educator. I know him as father to a young teenage son and steadfast husband to my friend Maria. Larry has served as an elected official for three successful decades. I know him for his boundless energy and creativity. I know him as a deep listener and resoluteness problem solver. When I attended his trial, I was dismayed to see so little demonstration of the real Larry Seabrook and the hard work he did in District 12. But I know my friend has much, much more to give and will always seek to serve his family, church and neighbors.

1

# A224

Sincerely,
Roz Calvert

# A225

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA

        v.                            10 Cr. 87 (DAB)

LARRY SEABROOK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**SENTENCING MEMORANDUM EXHIBIT B**


ANTHONY L. RICCO, Esq.
20 Vesey Street Suite 400
New York, New York 10007
(212) 791-3919
tonyricco@aol.com


EDWARD D. WILFORD, Esq.
20 Vesey Street Suite 400
New York, New York 10007
(212) 528-2741
edwardwilford@aol.com


Attorneys for Defendant
LARRY SEABROOK

# A226

**Maria Del Carmen Diaz**
170 Avenue C, 14B
New York, NY 10009

January 2, 2013

Honorable Deborah A. Batts
Judge, U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York

Honorable Judge Batts,

I am writing to ask for leniency and justice on behalf of my husband Larry B. Seabrook. I beg your indulgence and ask that you allow me to explain why his absence would be devastating to our family.

I do not consider myself a victim. I am a strong, proud Puerto Rican woman who has survived sexual abuse, being raised by an alcoholic mother and a part-time womanizing, gambling addicted father who divorced my mother when I was eight. (The only things they agreed on was the Brooklyn Dodgers, politics and education). To this day my sister, Juanita A. Diaz, PhD. and I still do not know how my mother was able to pay for our parochial school education working in a zipper factory.

As an adult I have overcome a marriage and divorce to an ill man with whom I had a son, now thirty-six. Also to Larry and my ultimate surprise, I became a mother again at the age of forty-four after having been sterilized fourteen years before. As a special education teacher I have worked with children born with genetic defects as well as the avoidable consequences of drug and alcohol abuse. But of all the challenges that I have overcome, being the single parent of an African American male has been the most difficult. If it were not for Larry my oldest son would have been lost to me. Larry never gave up on him. He modeled a work ethic that has allowed Alexi to become a happy productive man. Larry is not just a man, he is one of the finest human beings that I have had the privilege of knowing. Larry is a person who has taught me how to value and respect myself even when others haven't.

Larry grew up the seventh of nine children to church deacons, in a segregated south. He was gifted with a stable god loving, family. Their values were centered on God, family and friends, in that order. Larry knew what he wanted to be the minute he saw recordings of Adam Clayton Powell on T.V. The family still recounts how he led the students in his middle school on a walk-out to march for justice in Jacksonville. Each summer he would return from New York and confront his teachers with his knowledge of African American history. (Someone had made the mistake of trying to lecture him on the history of his people). A few days after he graduated from High School, Larry came to New York, just as his brother had done, to escape the vestiges of segregation.

Throughout his thirty years plus of service to his community, Larry has never taken the easy way out. From being recognized by The Daily News for creating the Traders Arrests and Conviction Program (DTAC) at the height of the drug epidemic, to shaming the advertising agencies into creating mentorship programs for minorities in 2006. Larry made it his business to ensure that each and every

school in his council manic district had a designated computer room and that Senior Centers had the necessary funds to provide quality of life services. When Larry saw that the piano at the Richard Greene School did not have any white keys he made sure that they acquired a new piano. It is unfortunate that the court never had the opportunity to hear from all the people that we had ready to speak attesting to all that Larry has done to empower the community he loves.

When I met Larry, I found him to be a true intellectual with an almost photographic memory when it comes to history, jazz and clothes. (One of the first names Lawrence learned to say was Buddy Bolden, the king of the coronet). More importantly he is a God loving Christian and member of Abyssinian Baptist Church. He can recite Bible passages and sing every hymn word for word. I went to Catholic school for thirteen years including kindergarten, and I can't do that.

Larry has never allowed others to define him, even when it was legal in this country. His strength of character comes from being well raised. Judge Batts, I would like our son to have that opportunity. The same fathering that Larry gave his four stepchildren (from first wife) and his daughter, Latisha. The kind of parenting that sets high standards and provides the proper supports.

For the past five year I have been a high school teacher and have not been able to attend any of my son's parent/teacher conferences as the schedules co-en side. Larry has been to all the conferences even if it has taken him two days to see all of the teachers. Last year the only football game that Larry missed was due to a court appointment.

Our son, Lawrence is 14 years old, the most delicate time for a adolescent to develop. He takes after his father. Lawrence is a gentleman and a truly good human being. He opens the door for women, carries their bags and he never leaves the elevator before a lady. Throughout this difficult period Lawrence has been a trooper. This past summer he decided to work to help pay his phone bill and to save money for the school year. However, Lawrence is also a strong willed and somewhat laid back teenager who is trying to define who he is by questioning our authority and not taking his schoolwork as seriously as he can. Having his father at home would ensure that he become the man he is meant to be.

Sincerely,


Maria Del Carmen Diaz

**Oliver Seabrook**
**485 West 187th Street, Apartment 6J**
**New York, New York 10033**
**212-923-6495**

January 4, 2013

Honorable Deborah A. Batts
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, New York 10007

Dear Justice Batts:

I am writing on behalf of my brother former New York City Councilman Larry B. Seabrook, to submit a written request for you to consider imposing a non-custodial sentence of probation when he appears before you on January 8, 2013. As his older brother for the past sixty-years, I have watched his development as a man and as an elected official, and for over thirty-years I have proudly witnessed his tremendous contribution to the improvement of his community as a public servant.

Specifically, his seven terms in the New York State Assembly, and his two terms in the New York State Senate, and in particular his terms as a New York City Councilmember where he served as the Chairman of the Civil Rights Committee, whereby his outstanding record of accomplishment in his struggle for jobs, and work force development training; and fighting for empowering minority and women owned businesses; public school construction; and for improving educational opportunities for students in the New York public school system.

Contrarily, Larry Seabrook stands before your court as a convicted felon, however I ask for you to take in consideration his service listed above in rendering a just sentence in his case. Moreover, sending my brother to federal prison would not satisfy the best interest of the government's criminal justice system, or my family, or above all else the community he served with distinction for over thirty-years.

Furthermore, my brother poses no threat or danger to public safety, and by the same token, nor does granting him probation in any way downgrades the jury's decision for a conviction. Certainly, he has been punished most severely by his ouster from the New York City Council and the collateral consequences attached to a convicted felon.

Conclusively, I humbly ask that you mercifully give my brother an opportunity to immediately begin his rehabilitation and allow him to maintain his family life by serving a probationary sentence as opposed to incarceration which at this point will serve no meaningful purpose.

Thank you for your consideration in this matter.

Sincerely,

Oliver Seebrook

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA

        v.                                 10 Cr. 87 (DAB)

LARRY SEABROOK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**SENTENCING MEMORANDUM EXHIBIT C**


                             ANTHONY L. RICCO, Esq.
                             20 Vesey Street Suite 400
                             New York, New York 10007
                             (212) 791-3919
                             tonyricco@aol.com


                             EDWARD D. WILFORD, Esq.
                             20 Vesey Street Suite 400
                             New York, New York 10007
                             (212) 528-2741
                             edwardwilford@aol.com


                             Attorneys for Defendant
                             LARRY SEABROOK

# CENTER FOR
# nuLEADERSHIP
## ON URBAN SOLUTIONS

18 December 2012

Honorable Deborah A. Batts
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Federal Court House
500 Pearl Street
New York, N.Y.  10007

Dear Justice Batts,

I am writing on behalf of former New York City Council member Larry Seabrook, to request that you consider giving him a sentence of probation when he appears before you. I have known and worked with Mr. Seabrook for the past 36 years. He has had an enormously positive impact on my life and has been primarily responsible for whatever success I have achieved simply because he gave me a second chance. As a person who was incarcerated for 25 years (1969-1994), I can state unequivocally that sending Mr. Seabrook to prison, even for a short period of time, would not satisfy the best interests of the state, his family or the community he served for so many years. Mr. Seabrook poses no threat or danger to public safety nor does granting him probation in any way depreciate the seriousness of his conviction. He has been punished severely by the loss of his elected office and the collateral consequences that attach to any conviction.

Although Mr. Seabrook has been duly convicted and it is not my intention to retry his case here, I would be remiss if I did not state my profound belief, based upon the available evidence, that Mr. Seabrook has been the victim of malicious and vindictive prosecution, and discriminatory and biased media coverage which most certainly tainted the jury and deprived him of a fair trial. While these issues will be raised on appeal, I am convinced that any unprejudiced review of the totality of the case will confirm my belief and that Mr. Seabrook will ultimately be vindicated.

I am writing as a personal friend of Mr. Seabrook and in my duel capacity as president of the Center for NuLeadership on Urban Solutions and as the executive producer for *On The Count!: The Prison and Criminal Justice Report*, a weekly public affairs program broadcast, for the past ten years, over radio station WBAI (99.5 FM) in New York. *On The Count!* is the only program on radio whose content focuses exclusively on criminal and juvenile justice public policy and legislative issues.  The Center for NuLeadership on Urban Solutions is an independent research, training and advocacy think tank, formerly at Medgar Evers College in the City University of New York.  It is the first such

The Center for NuLeadership on Urban Solutions
510 Gates Avenue, 1st Floor, Brooklyn, New York  11216
T: (718) 484-5879 | F: (866) 258-6417 | E: eellis@centerfornuleadership.org | www.centerfornuleadership.org

center in the country whose faculty is composed of formerly incarcerated professionals. During my eight years at Medgar Evers College, I was responsible for teaching and curriculum design, research and the formulation of criminal justice public policy reform advocacy.

As a result of my public policy work with the Center for NuLeadership, I was invited to the White House twice and became a consultant to the domestic policy advisor to President George W. Bush. Additionally, I served on the Transition Team for former New York Governor Eliot Spitzer and have been a consultant for the New York State Black and Puerto Rican Legislative Caucus, Vera Institute of Justice, Urban Institute, Council of State Governments, National Black Caucus of State Legislators and the Soros Foundation's Open Society Institute. I have conducted criminal justice symposia at Harvard, Yale, Columbia, and Stanford, among other colleges, lectured extensively and visited prisons throughout the United States, England, Scotland, Belgium, the Caribbean and South Africa.

I first met Mr. Seabrook in 1976, while I was in prison and he was a political science professor and an administrator of the Higher Education Opportunity Program (HEOP) at Marist College. As a student in his class, I was among the first group of men in any prison in the country allowed to take college courses in an under graduate degree program. Mr. Seabrook encouraged me to pursue my degree and provided tutorial assistance for me. Because of him, I acquired an Associate's degree in Para Legal Studies, a Bachelor of Science degree in Business Administration (magna cum laude) and a Masters degree in Theology.

Throughout the years, Mr. Seabrook has been a dear friend, counselor and advisor when I most needed support. A few years after I left prison, I lost my job. When Mr. Seabrook heard, he called and offered me a position on his senatorial staff which I accepted. My work with his office, the contacts he provided for me and the legislative experience I gained working under his guidance, prepared me to create the Center for NuLeadership. We have collaborated closely on various projects ever since. Mr. Seabrook made it possible for me to achieve career success I could only dream about without his assistance.

Although I spent 25 years in prison, I have always maintained my innocence. I was arrested and convicted as a result of malicious prosecution and media distortion of my record and my political activities. I spent all that time in prison for a crime I did not commit. In 1967 I was targeted for *"neutralization"* under the FBI Counter Intelligence Program (COINTELPRO), resulting in my arrest, conviction and imprisonment. At the time I was a leader in the Black Panther Party, a writer, lecturer and community activist, so I have personal familiarity with prosecutorial misconduct and the government's use of media to stigmatize and malign a defendant. To date, I have been unable to establish my innocence because of the FBI's refusal to redact and release my files.

In his seven terms in the New York State Assembly and in his two terms in the New York State Senate Larry Seabrook's legislative record of achievement runs deep and reflects his exceptional commitment to his constituents. As a member of the New York City

The Center for NuLeadership on Urban Solutions
510 Gates Avenue, 1st Floor, Brooklyn, New York 11216
T: (718) 484-5879 | F: (866) 258-6417 | E: eellis@centerfornuleadership.org | www.centerfornuleadership.org

# A233

3

Council and as the Chairman of the Civil Rights Committee, Mr. Seabrook has an outstanding record of accomplishment in fighting for jobs and workforce development training; empowering Minority and Women Owned Businesses, rebuilding schools, improving education opportunities for elementary, middle-school high school students; and strengthen voting rights for his constituents and for all New Yorkers. Mr. Seabrook is a man of exemplary character, a visionary leader, teacher and powerful advocate for under-served communities. He is a devoted father, loving husband and faithful member of the historic Abyssinian Baptist Church in Harlem where he has worshiped with his family for many, many years.

I have learned much from this man. He supported me in prison and upon my release when few others would. He facilitated my college education and provided me with employment when I most needed it. He taught me to overcome the bitterness and anger I felt at having spend so much time in prison for something I did not do. And, over the years, he has extended himself to numerous other formerly incarcerated men, allowing us the second chance to make something of our lives. I now humbly ask that he be afforded the same opportunity.

For all of these reasons, I have absolutely no hesitation in recommending Mr. Seabrook for a sentence of probation as opposed to incarceration. His outstanding record of service speaks for itself and is well documented. Accordingly, I implore you to please consider all of these factors as you make your decision. I do not think any meaningful objective will be served by sending my dear friend, mentor and teacher to prison.

If I can be of further assistance, please call me. My personal number is 917-520-9223. Thank you for any consideration you give to this request. God Bless.

Respectfully,

Eddie Ellis
President
Center for NuLeadership on Urban Solutions

The Center for NuLeadership on Urban Solutions
510 Gates Avenue, 1st Floor, Brooklyn, New York 11216
T: (718) 484-5879 | F: (866) 258-6417 | E: eellis@centerfornuleadership.org | www.centerfornuleadership.org

D18PSEAS                    Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          10 CR 87 (DAB)

LARRY SEABROOK,

                Defendant.

------------------------------x

                                        New York, N.Y.
                                        January 8, 2013
                                        11:08 a.m.


Before:

                    HON. DEBORAH A. BATTS,

                                        District Judge


                        APPEARANCES


PREET BHARARA,
        United States Attorney for the
        Southern District of New York
KARL N. METZNER
RANDALL JACKSON
STEVE LEE
        Assistant United States Attorneys
LAILA YU, Case Agent
MICHAEL DINET, Paralegal

EDWARD WILFORD
ANTHONY RICCO
        Attorneys for Defendant

1    (In open court)

2    THE COURT:  United States of America versus Larry

3    Seabrook.  Is the government ready.

4    MR. METZNER:  Ready, your Honor.  Karl Metzner,

5    Randall Jackson and Steve Lee on behalf of the government;

6    also, Laila Yu and Michael Dinet.

7    THE COURT:  Good morning to all of you.

8    MR. JACKSON:  Good morning, your Honor.

9    THE COURT:  And on behalf of Mr. Seabrook we have

10   Anthony Ricco and Mr. Wilford.

11   MR. RICCO:  Good morning, your Honor.

12   MR. WILFORD:  Good morning, your Honor.

13   THE COURT:  Good morning, Mr. Seabrook.

14   THE DEFENDANT:  Good morning.

15   THE COURT:  Mr. Seabrook, on July 26th, 2012, you were

16   found guilty, after a jury trial before me, on nine counts of

17   conspiracy, mail and wire fraud.  You're before me this morning

18   to be sentenced for those crimes.  Now, Mr. Seabrook, have you

19   received, read and reviewed with your attorneys, Mr. Wilford

20   and Mr. Ricco the presentence report prepared by the probation

21   office?

22   THE DEFENDANT:  Yes, your Honor.

23   THE COURT:  Messrs. Ricco and Wilford, have you read

24   and reviewed with Mr. Seabrook the presentence report?

25   MR. WILFORD:  Yes, your Honor.

# A236

1        MR. RICCO:  Yes, your Honor.

2        THE COURT:  Do any of you have any objections to raise

3    at this time to the report, that were not already raised and

4    addressed, by the Department of Probation?

5        MR. WILFORD:  No, your Honor.

6        MR. RICCO:  No, your Honor.

7        THE COURT:  Messrs. Metzner, Jackson and Lee, are

8    there any objections you would like to raise now to the

9    presentence report, on behalf of the government, that have not

10   already been raised and addressed?

11       MR. METZNER:  No, your Honor.

12       THE COURT:  Mr. Seabrook, the Court is in receipt of

13   letters from your family and friends on your behalf.  Is there

14   anything pertinent to sentencing that you would like to say on

15   your own behalf before the Court sentences you?

16       THE DEFENDANT:  Yes, your Honor.

17       THE COURT:  Okay.  Please remain seated, and is the

18   microphone in front of you?

19       MR. WILFORD:  Right here, your Honor.

20       THE COURT:  Okay.  Thank you.  You may proceed.

21       THE DEFENDANT:  Yes.  Good morning, your Honor, and

22   thank you very much for giving me this opportunity to have

23   something to say to the Court.  First of all, I want to talk

24   about myself as a family man and being here, but I also want to

25   talk about the 30 years of services that I've given to a

1   community in which I love and gave dearly and gave

2   opportunities to people to participate in those services that

3   were necessary for our community.  And in the process of doing

4   that, there were people that I felt would come and do services

5   to our community and assist in our community, and some of those

6   same people did not do what they were supposed to do.  And I

7   guess I will take the responsibility of that which they did,

8   but I know that the level of criminality that they might have

9   done certainly was not a part of me, but I accept the jury's

10   charge of what they have actually charged me with.

11           I come from a strong family background, have a strong

12   belief system and believe in the system and will never ever

13   doubt the system and I'm encouraged.  I will continue to do it

14   and continue to have my faith and my family for what I believe

15   in and what I strongly continue to believe in, in terms of

16   giving service to my community, a community that I gave my all

17   to, every inch and every step of the way and that I truly love,

18   the northeast Bronx, and my service for all.

19           I gave opportunities to a number of people, who are

20   here, by giving them a lift up so that they would be better off

21   in service.  I gave it to them, giving the opportunities for

22   education, going back to the same housing development and

23   projects that I came out of and giving these young people an

24   opportunity to go to college and also giving the opportunity

25   for me to teach at a college in an opportunities program and to

1  bring incarcerated individuals into the mainstream of a campus

2  and allowed them that opportunity to better themselves.

3         I have always given, and I will continue to give

4  whatever the Court looks at and deal with it, that I know that

5  I came as a proud man, that I stand up in my beliefs, and I

6  will take on whatever it is that the Judge of this court metes

7  out to me.  But I will know that I will continue to fight and

8  do what has to be done for the service of people because that's

9  all I know in terms of giving service.  Thank you very much,

10 your Honor.

11        THE COURT:  Thank you, Mr. Seabrook.  Now, Mr. Ricco

12 and Mr. Wilford, the Court is in receipt of your November 26th,

13 2012, sentencing submission; your responsive letter of

14 December 19th, 2012, and enclosures; your responses on

15 restitution of December 20th, 2012; your letters of

16 January 4th, 2013, and enclosures.  Is there anything else you

17 would like to say on Mr. Seabrook's behalf before sentencing?

18        MR. RICCO:  Yes, your Honor.  Good morning, your

19 Honor.

20        THE COURT:  Good morning.

21        MR. RICCO:  I have always found sentencing the most

22 difficult part of the work that I do as a defense attorney, and

23 I've struggled with learning about sentencing since I first

24 started practicing in the courts.  I know that the Court relies

25 upon counsel to provide the Court with as much meaningful

1  information about a defendant who has to be sentenced as
2  possible.

3          And in that context, your Honor, I've thought quite a
4  bit about sentencing of Larry Seabrook, and both Mr. Wilford
5  and I have spent an extraordinary amount of time listening to
6  Mr. Seabrook both before and an extraordinary amount of time
7  after the verdict, listening to him talk about his life
8  journey, who he perceives himself to be and his future.

9          Now, your Honor, as a backdrop, I have to tell the
10 Court that I've known Mr. Seabrook professionally for 29 years,
11 and so while listening to a lot of the evidence that was
12 presented and arguments that were presented about Mr. Seabrook,
13 it was difficult.  It was difficult to reconcile my own
14 professional experiences with what I heard, but because I've
15 been practicing law a long time, every day you hear something
16 different.  But I did listen to the government's arguments
17 about how Mr. Seabrook betrayed his community, very, very
18 strong -- in very, very strong terms, and how he was described
19 in connection with his role in the community.

20         I listened to the analogies that were used and
21 employed, which I thought belittled an extraordinary commitment
22 that I've seen and has been reflective in his legislative
23 history and in the words and in the eyes of his neighbors in
24 his community.  But regardless of how I felt, I knew that the
25 Court was entitled to a complete picture of who Larry Seabrook

1  is because I knew that this Court was making a very important

2  sentencing decision in this case.

3          Now, the demands of practice often make it difficult

4  to find the time for the type of reflection that is needed to

5  think about what one is going to say in connection with

6  sentencing, but the time was taken.  And I would say to the

7  Court that this Sunday, I was up at Abyssinian Baptist Church.

8  I was there with Larry Seabrook.  Larry was there --

9  Mr. Seabrook was there doing what he does every Sunday.  He's a

10  long-term member of Abyssinian.  He was there paying his

11  respects to God, seeking direction, hope and faith.

12         I was there giving him support, but I would have to

13  say to the Court, honestly, I was there trying to collect my

14  own thoughts about what I would say to you.  I wanted to remove

15  from my thoughts any bitterness, any personal view about

16  Mr. Seabrook, to be in a position where I could be what this

17  Court would expect of me, or any other lawyer, to do their best

18  and report about a defendant.

19         I listened very closely to Reverend Butts' sermon.  It

20  was on the topic of service and forgiveness, and I sat there

21  thinking to myself, boy, did I pick a Sunday to come here.  And

22  he went and talked about passages from Timothy, where he

23  described this notion if I can help somebody, if I can do my

24  duty, then my life wasn't in vain.  And as I listened to

25  Reverend Butts, I thought about Larry Seabrook, and I wondered,

1  did Larry Seabrook have an opportunity to help people?  Yes, he

2  did.  Did he?  Absolutely.  Did he do his duty?  He did.  Did

3  he fail in his duties?  Yes, he did.  Is he entitled to

4  forgiveness?  Is he capable of redemption?  Does he have the

5  ability to rehabilitate himself?  Is he a threat to us and the

6  community now?

7         I thought about it and I said, you know, Larry

8  Seabrook didn't betray anyone in the Bronx.  Larry Seabrook

9  made a mistake in judgment that had criminal consequences by

10  permitting his personal politics to interfere with his judgment

11  in the exercise of his duties is what the jury found.

12         And in my adult life alone, your Honor, this issue,

13  that is of elected public officials permitting their personal

14  politics to interfere with their judgment and exercise in their

15  public duties, has been at the doorsteps of governors across

16  our nation, judges who preside in some of the highest courts in

17  the states, members of Congress, commander in chiefs of the

18  armed services, and even the office of the President of the

19  United States.  And that's just in my adult life.

20         I didn't mention these other circumstances as an

21  excuse for this type of conduct but to give Larry Seabrook's

22  shortfall, his shortcomings perspective in relationship to the

23  offense charged.

24         The government did what it had to do.  It employed

25  skill and resources, and it secured a conviction against Larry

1    Seabrook under the theory that he padded payrolls of not for

2    profits, for family members and friends.  And to make the

3    point, they called witnesses who were employed by Negro --

4    African American Legal and Civic Hall of Fame, but these

5    witnesses said something very interesting in their testimony.

6    They said that they had intentionally and purposely forged

7    checks, back-dated billing documents, created false and

8    fraudulent vendor contracts, took money that they weren't

9    entitled to, but through agreements with the government, they

10   were permitted to walk away without facing any criminal

11   prosecution, without facing jail, without even facing the

12   responsibility to have to pay that money back.

13          These witnesses told us about Larry Seabrook's

14   relatives, and they told us about the competency of Gloria

15   Jones-Grant.  And it's significant, your Honor, that these

16   witnesses also told us something very important that I would

17   like the Court to consider.  These witnesses purposely and

18   intentionally did not inform Larry Seabrook of what they were

19   doing.  They did that because they knew that Larry Seabrook

20   would not approve of that.  And I want to read to the Court

21   something that was said under oath about that:

22   "Q.  Is it true that you and Councilman Seabrook, on

23   occasion" -- This is Mitch Duren, under oath -- "Is it true

24   that you and Councilman Seabrook, on occasion, discussed the

25   performance, or lack thereof, of Gloria Jones-Grant; isn't that

D18PSEAS                    Sentence

1   right?

2   "A.  Yes, that's correct.

3   "Q.  And Councilman Seabrook said it was Gloria Jones' fault

4   for not getting paperwork off the desk and not opening her

5   mail; do you remember him saying that to you?

6   "A.  Yes.

7   "Q.  Councilman Seabrook questioned whether Gloria had the

8   skills to write a sales proposal; isn't that correct?

9   "A.  Yes.

10  "Q.  Though Miss Grant, on paper, had the academic credentials;

11  isn't that correct?

12  "A.  Yes.

13  "Q.  There was no question that Councilman Seabrook questioned

14  her ability to deliver, right?

15  "A.  Yes.

16  "Q.  And that was a conversation that you both had; isn't that

17  correct?

18  "A.  Yes.

19  "Q.  Now, these conversations, they were taking place when

20  there was delays in connection with the payment for vendors,

21  time sheets and everything, right?

22  "A.  Yes.

23  "Q.  The hard work of getting the programs -- of getting the

24  programs was falling apart; isn't that right?

25  "A.  Yes.

1    "Q.  And Councilman Seabrook was looking for answers, right?

2    "A.  Yes.

3    "Q.  And at that -- and the time he was looking for those

4    answers, you never volunteered to say to him, Councilman

5    Seabrook, I'm partly responsible because I've been submitting

6    bad documents, right?

7    "A.  Yes.

8    "Q.  You never said that to him?

9    "A.  No.

10   "Q.  And at no time when you were having that conversation with

11   Councilman Seabrook and he was frustrated with the programs

12   going down, did you say to Councilman Seabrook that you had

13   instructed one of the young people in the program to backdate

14   documents?

15   "A.  No, I did not mention that to Mr. Seabrook, no.

16   "Q.  And the reason why you didn't mention it to him is because

17   you didn't want him to know; isn't that right?

18   "A.  Yes.

19   "Q.  You kept that information from him; isn't that right?

20   "A.  Yes.

21   "Q.  Do you remember when I asked you on Wednesday about the

22   concept of letting somebody down?

23   "A.  Yes.

24   "Q.  And you knew if you told him these things, Councilman

25   Seabrook, you would have been letting him down?

D18PSEAS                    Sentence

1    "A.  Yes.

2    "Q.  He put a lot of faith and trust in you, right?

3    "A.  Yes.

4    "Q.  To help the other kids get to where you are, right?

5    "A.  Yes.

6    "Q.  And you betrayed that trust; isn't that right?

7    "A.  Yes.

8    "Q.  He did his job, didn't he?

9    "A.  Yes.

10   "Q.  You didn't do yours, right?  Is that right?

11   "A.  Yes."

12          Now, I mention that, Judge, only for a very small

13   point.

14          THE COURT:  Would you do me a favor, Mr. Ricco, would

15   you give me the cite to that?

16          MR. RICCO:  I will give you that.  I will give you

17   that information.  These were statements made under oath by

18   Tyrone "Mitch" Duren.  And what we were left with is having to

19   inform the Court about the background and character of Larry

20   Seabrook.

21          Judge Batts, we wrote -- Mr. Wilford and I wrote a

22   lengthy sentencing submission about Larry Seabrook's background

23   and character, and I know that the Court can tell a great deal

24   of effort went into writing of that document.  We knew that we

25   had to, justice required us to, fairness dictated that we do

1    that, in order to bring meaning to 3553(a), we had to do it.

2           Although the Court will never meet Betty Burney and

3    Priscilla Jenkins, the Court does know and has read about them.

4    The Court has information that they were both educated women

5    who overcame tremendous obstacles in society that were put in

6    their path and they made it.  Both are bright, educated,

7    talented, never been arrested for crimes in their life.  Oliver

8    Seabrook, present here today, a retired sergeant in the United

9    States Army, a college graduate a man of professional

10   accomplishments and distinctions.  He served as a director of a

11   federal halfway house right here in New York City.  Michael

12   Deas is present today.  He's a nephew, a Master's degree,

13   running a male initiative program, and Keith Johnson, the man

14   described at the trial as the lazy guy with his feet up at his

15   desk, sitting there sleeping is in reality a very hard working

16   family man with a learning disability.

17           THE COURT:  I'm sorry, with?

18           MR. RICCO:  With a learning disability, but works to

19   support his family.  Now, these things have been mentioned to

20   you, your Honor, because they're part of Larry Seabrook's

21   background.  His family members are part of his character and

22   each of the persons described were part of the circumstances of

23   the offense.

24           One person who wrote to the Court said to your

25   Honor -- one of the women who wrote in support of Larry

# A247

1   Seabrook said:  I can say with certainty, even those who the
2   government used as witnesses and provided immunity would say,
3   that Larry Seabrook is a man of integrity, has showed them
4   nothing but kindness.  That's true, Judge.  That's true of the
5   government witnesses.  The government witnesses who were
6   involved in backdating documents and things of those natures,
7   they were inspired to give back to the community by Larry
8   Seabrook.  Larry Seabrook helped them reach their educational
9   goals.  He helped them secure the jobs that they have to this
10  day, that included both William Low, who's an attorney today;
11  Tyrone "Mitch" Duren, who testified; Leon Eastman, respected
12  and admired Larry Seabrook.  Why?  For his commitment to the
13  community and his dignity as a human being.

14          Now, no person, however, has described Mr. Seabrook in
15  greater detail than his wife.  Mrs. Seabrook's letter to this
16  Court was one of the most extraordinary letters that I've seen
17  in my 30 years of practice.  It was touching.  It was moving.
18  It was real.  During the trial, I often wondered how could
19  Miss Seabrook sit here day after day and listen to the way in
20  which her husband was described.  And she would sit here proud,
21  her head up, never making a comment, never showing any facial
22  expressions.  I wondered.  But after reading -- especially the
23  testimony about Gloria Jones-Grant.

24          But after reading Miss Seabrook's letter, I learned
25  how and why.  We learned so much about who she is and what she

1   overcame in her own life and her sense of -- being subject to

2   abuse as a child and as an adult has given her a sense of

3   fairness and insight into people.  She knows character when she

4   sees it, and she says Larry Seabrook abounds in it.

5        At first we didn't have a letter from her.  We asked

6   her for a letter, and she said:  Well, I don't really want to

7   write because my thoughts about my husband are personal, and me

8   and my son have suffered enough, and I don't want to write.  I

9   asked her to write because it could be taken the wrong way if

10  she did not write.  And so in her own time, she wrote a letter.

11  Not from the perspective of a school girl in love, but from the

12  eyes and the heart of an experienced woman who has raised her

13  adult son and who has overcome so much.

14       She told the Court sort of an insider's view of Larry

15  Seabrook, about the background and character of Larry Seabrook.

16  She shared with the Court her soul, her truth.  She said that

17  he was an extraordinary man of tremendous ability, love and

18  compassion; that he's a man who helped save the life of her

19  other son, who was abandoned by his natural father.

20       Some letters came from people as far away as Florida,

21  people who knew Larry Seabrook back from his days at old

22  Matthew Gilbert segregated high school in Duval County,

23  Florida.  All of these -- Some of these people knew Larry

24  Seabrook over 40 years, and each and every person said the same

25  thing about Larry Seabrook, giving, compassionate, proud,

1  dignified.  It reminded me of my own experiences with the

2  defendant, and it leads us to a point where so many people are

3  saying something about an individual, there must be a ring of

4  truth to it.

5           Now, does that mean that those individuals can't fail,

6  commit criminal acts?  Absolutely not.  Absolutely not.

7  Mrs. Seabrook said to you, as she desperately wants her young

8  son to have the benefits of a father's love and direction that

9  her own son almost missed but for Larry Seabrook, she

10 attributes Larry Seabrook to helping her son become the man

11 that he is.  She told you that Larry Seabrook was from a great

12 family and the accomplishments of two barely -- uneducated,

13 formal education, South Carolinians, Oliver and Helen Seabrook,

14 who themselves were deprived of every opportunity that most

15 people then enjoyed as a birthright.

16          Oliver Senior, and Helen strove to instill in their

17 children to overcome the opportunities that were willfully

18 withheld from them in their lives.  It took the opportunities

19 from -- those are his parents, but it didn't take from Oliver

20 Senior and Helen their dreams, and all nine of the Seabrook

21 children have accomplished, they achieved college, graduate

22 school, are professionals.  Larry Seabrook is the seventh of

23 nine children that came out of Duval County.  We know that

24 their parents were great, though we never met them, and we know

25 that their grandparents must have been even greater because the

1    influences that they gave to Larry and Oliver and the rest of

2    the Seabrooks that are here today didn't just end with their

3    own kids.  You know their kids did well, and they packed up and

4    moved on and left people behind?  No.

5         Oliver Senior and Helen's children inspired other

6    people's children, people that they never met, and their own

7    children.  Mr. Seabrook's adult daughter is here today.  She

8    has attended law school.  She has a Master's degree, a

9    responsible job with the City.  Betty Burney, Priscilla

10   Jenkins, Oliver Seabrook, all of their children are educated,

11   functioning in society, doing well.

12        Sorry.  Their sense of inspiration for achievement did

13   not stop with their family.  Betty Burney wrote a book that "If

14   These Chains Could Talk."  That title in the book was the

15   subject of the government's proof.  It was a part of the fraud,

16   but nobody introduced the book because the book is an

17   extraordinary piece of literature.  It's an effort by a very

18   educated woman to help educate young black boys to understand

19   the fate that awaits them in society if they do not become

20   educated and to learn.

21        The book was written by a Seabrook and delivered by a

22   Seabrook from Georgia to the Bronx.  That was part of Larry

23   Seabrook's background and character, because Betty Seabrook

24   writes to the Court and says, your Honor, I never got one dime

25   for that.  Every dime that I received in connection with that

1  book went to the printing costs and shipping them.  And she

2  says to the Court, I don't know how many books were left, but I

3  could tell the Court that I signed at least 600 copies of the

4  book myself.  And this is coming from a woman with no criminal

5  record, no ill will, no nothing in the Court about her

6  background.

7         Now, when we look around this morning and look at the

8  faces of some of the people who are here this morning, they are

9  people from the Bronx.  They're very distinguished.  They came

10 here today to give support to a man for three decades that has

11 been there for them.  Through thick and thin, through the good

12 times and the bad times, Larry has been there.  Larry Seabrook

13 has been there for his community.  And many of them older,

14 experienced people showed up today just to be there for him.

15 They're experienced people.  They know life.  They know that

16 this Court has to impose punishment, but they wanted to be here

17 quietly, but in a dignified way, to show him the kind of

18 support that we all hope we would all, any of us, would have

19 who would need to be in this situation.

20        The Court is empowered to impose a sentence sufficient

21 but not greater than necessary to fulfill the important goals

22 of deterrence, protecting the public from future crimes,

23 punishment and other factors.  Many, many years ago, a

24 long-forgotten and distinguished judge of this court, Judge

25 Franklin, who served here in the '70s, wrote the following when

Sentence

1   he was resentencing a defendant.  He said:  The defendant had

2   no prior record -- I'm reading from the Braun case, 382 F Supp.

3   Page 214.  The defendant, he had no prior record.  He's

4   talented, gainfully employed, earnest in the discharge of his

5   family obligations and entitled to hope for a bright, if

6   unsung, future.  He needs no rehabilitation that our prisons

7   can offer.  The likelihood that he would transgress again is as

8   close to nil as we ever are able to predict.  Defendants, the

9   greatest text tells us, is not for moral judges.  Why then

10  should a man be sentenced to -- this man be sentenced to prison

11  at all?

12        The person that Judge Braun described sounds a lot

13  like, though not exactly like, Larry Seabrook, Oliver and

14  Helen's seventh child.  He's 62 years old -- He'll be 62, I

15  think, in July, Judge; 61 today.  He stands before the Court to

16  account for his behavior upon which a jury convicted him, theft

17  of honest services from the City of New York in the discharge

18  of his duties as a member of the City Council.  What is the

19  likelihood of his future crimes?  How do we protect the men and

20  women of the City of New York from him?  How do we send a

21  message to other politicians, public servants who are

22  exercising inappropriate judgment in the exercise of their

23  professional duties?  How do we repair the lost opportunity

24  from the failed contracts?

25        I don't think we can.  Those are opportunities lost

1    forever, but, your Honor, you can require Larry Seabrook to
2    continue to provide opportunities in the future for young men.
3    He's done it in the past, long before it counted, provided
4    opportunities for men coming from jail.  One extraordinary
5    letter was written by a Mr. Ed Ellis, who talked about the
6    assistance and inspiration that Mr. Seabrook gave him after
7    serving 25 years in the state penitentiary.  He said
8    Mr. Seabrook gave him an opportunity when no one else would,
9    that Mr. Seabrook has inspired him to continue with his
10   education, and he did.  He's doing fabulous since the day he
11   walked out of prison.  He says:  If it wasn't for Larry
12   Seabrook, I wouldn't be where I am today.  That's his account.
13          Larry Seabrook, your Honor, his life is not over.
14   He's got a lot of years ahead of him.  He's made a mistake.
15   He's got to account for that.  The law requires it.  He sought
16   his peace with God.  He sought his peace with his community.  I
17   saw him walking around the Bronx talking to his neighbors after
18   the verdict.  He didn't see me, but I saw him.  He sought his
19   peace with his family.  He has great days ahead of him, and
20   notwithstanding a few moments of panic since his conviction,
21   he's arrived here today focused and hopeful.  He's arrived
22   whole and intact with his family, his friends, his brother, his
23   sisters, his nephews and his children and many people who he's
24   helped.  He's here today.  They're here today for him when he
25   needs them the most.

1      Now, does declaring a person guilty strip them of

2   their dignity and their accomplishments and their character and

3   their background? ·Answer, to people who study life and

4   understands the thoughts and wisdom of Congress in its

5   sentencing mandate, the answer to that question is, no, they do

6   not because Congress has set mandatory minimums for some

7   sentences but, others like the one that Larry Seabrook is

8   guilty of, have no mandatory minimums and leaves to the Court

9   great discretion in deciding where to sentence an individual.

10      The Court is given a wide range to impose a sentence,

11   including a non-custodial sentence.  Congress says consider the

12   background, the history and the character of the offender, the

13   history and character, because Congress recognizes that a

14   person who has spent their entire life in and out of jail, a

15   person who does not support their children, a person who has

16   been granted opportunity after opportunity can be convicted of

17   the very same offense that a person who has had an exemplary

18   record of academic and social achievement, who's overcome great

19   obstacles, who has supported and educated their children and

20   others, a person who contributes time and time again to the

21   benefit and well-being of others, can stumble and fall and find

22   themselves convicted of the same offense as the other person.

23      Does Congress say treat them the same?  No.  Congress

24   says consider their individual history and character.  Congress

25   says consider the need for rehabilitation.  Congress says look

1   at whether the person will be a continuing threat to the

2   community and impose a sentence that will protect people from

3   that individual.

4        In every criminal case that I've stood on since

5   Booker, the government has stood up and says, the guidelines is

6   the appropriate sentence, impose the guidelines.  In the

7   post-Booker era, so much more should be brought to the

8   attention of the Court.  What is Larry Seabrook?  He's now a

9   convicted felon.  Who is Larry Seabrook?  He's far more than

10  that.  He has inspired and helped dozens.  He came out of

11  segregation in the south unbound and unbroken and it bothers

12  some people to say that and to remind them of that.

13       He listened and heard the clarion call of his

14  generation.  He heard the call of Dr. Martin Luther King

15  Junior, of Fannie Lou Hamer, of Ella Baker and many others of

16  his era.  Larry Seabrook's generation was inspired by "We shall

17  overcome" and he did, not only for himself, but for many

18  people.  He has an impressive legislative record in the

19  Assembly, in the Senate, and in the City Council that attest to

20  those accomplishments.  But they're not accomplishments for the

21  sake of accomplishments, no, Judge Batts, they're not.  They're

22  accomplishments because they're part of his history and they

23  tell us something about his character.

24       I'm almost done.  The Court does have to look at the

25  circumstances of the offense, and plus the government spends a

1  great deal of time with that. The case was what it was. For

2  some of us, we did it twice, and I know that your Honor's happy

3  that she's not in that situation, but we went through it twice.

4  What happened here? A great person, a fabulous husband -- not

5  my words, the person he's married to -- an extraordinary

6  father, a dedicated and committed public servant crossed the

7  line and permitted his personal judgment to get in the way of

8  the execution and discharge of his public duty. Larry Seabrook

9  exercised poor judgment, particularly in hiring Gloria

10  Jones-Grant and keeping her on, and the jury so found. Take

11  her out of the picture, Judge, I don't think we'd be standing

12  here today.

13          THE COURT: I'm sorry?

14          MR. RICCO: I'm sorry. My voice is trailing off, and

15  I'm near the end. Take Miss Jones-Grant out of the picture,

16  and I don't think we're here today because the evidence showed

17  that while we may not have liked Priscilla Jenkins or Betty

18  Burney or Oliver Seabrook, we may not have liked Mitch Duren,

19  Philesha Jude, the other individuals who testified, they all

20  testified that they worked and they tried. I think William Low

21  said that Oliver Seabrook's work was exemplary in what he did,

22  and so Larry Seabrook fell short. His covenant was broken, and

23  now he's here for punishment.

24          Do we punish him, Judge, severely? How often does

25  this Court have before it a man with his background, where

1  people can come in here and say the really good things that

2  they've said about him?  How often does that happen?  In my

3  experience, it doesn't happen often.  Now, to those who have

4  been given much, much is expected, but no one has asked people

5  to be perfect.  We found out through this trial that the public

6  servant that everybody admires and respected exercised poor

7  judgment.

8          I would ask the Court to do something that Larry

9  Seabrook has demonstrated over his lifetime, from seeing to it

10  that the 1958 Negro Football Team got their State Champion

11  credential 50 years later, to participating and creating

12  opportunities for young people, I would ask that the Court

13  exercise, and I know that the court will, compassion,

14  forgiveness, if appropriate, to give Mr. Seabrook something

15  that he gave Eddie Ellis and a lot of kids in the Bronx, a

16  meaningful opportunity for a second chance and to make it

17  right.  He's not young.  He ain't that old either, but he's 61.

18          THE COURT:  Thank you.

19          MR. RICCO:  But he's not young, and I would say,

20  Judge, that Mr. Seabrook has earned the right to at least ask

21  the Court -- and I would have to tell you, Judge, you don't

22  want to know how much time Mr. Wilford and I spent deciding

23  whether or not we were going to ask the Court for a

24  non-custodial sentence.  We had conversation back and forth.

25  That's a non starter, and we thought about it and thought about

1  our experiences, and we thought about who the offender was.

2  And we could come up with nothing more than to at least ask the

3  Court to consider it because we could not think of a person

4  more worthy of being in a position to at least ask the Court to

5  consider such a sentence.

6         Judge, it is for all of these reasons, plus many, many

7  more that we don't have the time to do -- it's all in the

8  sentencing memorandum, it's all in the letters, the beautiful

9  letters that were written.  You know, we didn't give the Court

10  a hundred letters from everybody in his district, just a

11  handful of family and friends so that the Court could see

12  inside.  People like Larry Seabrook, who have had a lifetime of

13  achievements, whose crimes, while serious, very, very serious

14  public servant serious, big-time serious, but lacked that sort

15  of malicious, evil intent and purpose, that people who are

16  capable of redemption and rehabilitation.

17         Larry Seabrook is one of those people who poses no

18  future threat to the public.  He's a man who has overcome so

19  much and has given so much of his life to the public community.

20  That man is Larry Seabrook, and it's for those reasons that

21  Mr. Wilford and I requested, and did not do it lightly, for

22  this Court to consider all of those factors in arriving at a

23  sentence we asked for, non-custodial.

24         So at the end of the day, Judge, every litigant that

25  comes before this Court wants to feel as though they've had

their day and they've been heard.  I think Mr. Seabrook feels

2   that way.  This Court has given Larry Seabrook that opportunity

3   to express himself and for counsel to express themselves, and

4   we appreciate and respect the Court for allowing us to do that.

5   Thank you very much.

6           THE COURT:  Thank you, Mr. Ricco.

7           Mr. Metzner, Mr. Jackson, Mr. Lee, the Court is in

8   receipt of the government's sentencing submissions of

9   November 13th, 2012, November 29th, 2012, and responsive

10  submission of December 13th, 2012, addressing restitution.  Is

11  there anything else you would like to say on behalf of the

12  government before sentencing?

13          MR. METZNER:  Just briefly, if I may, your Honor.

14          THE COURT:  Please.

15          MR. METZNER:  Last summer, for about a month, a jury

16  of 12 citizens sat right here in this courtroom and listened to

17  the evidence in this case.  They reviewed the documents.  They

18  saw the witnesses.  They listened to the witnesses' testimony.

19  They saw the cross-examination of the witnesses, including the

20  section that Mr. Ricco cited to the Court.  After considering

21  all of that evidence, after hearing all of the arguments of

22  defense counsel and the government, that jury of 12 citizens

23  found unanimously and beyond a reasonable doubt that Larry

24  Seabrook was personally and criminally responsible for the

25  fraud scheme charged in the indictment.

1    They did not find that someone else was responsible

2    for these frauds.  They found that Larry Seabrook was

3    responsible for these frauds.  He has been found guilty based

4    on the evidence, and we submit, your Honor, that that same

5    evidence supports a sentence within the applicable sentencing

6    guideline range of 87 to 109 months.  Thank you.

7    THE COURT:  Thank you, Mr. Metzner.  I accept and

8    adopt the factual recitation set forth in the presentence

9    report.  I accept and adopt the criminal history category of I.

10   I also accept and adopt the financial conditions and ability to

11   pay fines of the presentence report.  I do not, however, accept

12   and adopt the advisory guideline offense level of 29, as set

13   forth in the presentence report.

14   The presentence report's guideline offense level was

15   calculated assuming a loss of more than $1 million.  The Court,

16   however, acknowledges that some of the losses were attributable

17   to other persons and the defendant was not aware of their

18   actions.  Accordingly, the Court has determined that the loss

19   attributable to the defendant is less than $1 million and,

20   thus, his guideline offense level is 27 and not 29.  The

21   presentence report shall be revised to reflect the correct

22   guideline offense level of 27.

23   The Court presided over this retrial, as well as at

24   substantive pretrial hearings and is familiar with all the

25   evidence.  In addition, the Court has considered and determined

1  both pretrial and post-conviction motions.  The Court found the

2  post-conviction motions to be without merit.  The defendant, a

3  former councilman, finds himself before this Court to be

4  sentenced on nine felony charges.  While the Court does not

5  doubt that the defendant did serve the public as an elected

6  official, the evidence at trial clearly established that his

7  qualities and accomplishments as a public servant are vastly

8  diminished because of his sense of entitlement, arrogance,

9  nepotism and greed.

10         Instead of holding himself to a higher fiduciary

11 standard as a councilman, the defendant held himself above the

12 law.  The defendant, as a member of the City Council, betrayed

13 the public trust by using his office to enrich himself and

14 others.  The defendant argues that there should be some

15 adjustment to the amount of loss for work actually performed on

16 the contracts awarded the defendant's organizations.  The trial

17 record is devoid of evidence of work actually performed.

18         Further, in addition to substantive counts of mail and

19 wire fraud, the defendant was convicted of multiple

20 conspiracies to commit mail and wire fraud.  No co-conspirator

21 was indicted or convicted here, but there was competent

22 evidence at trial that several of the defendants'

23 co-conspirators enriched themselves without the knowledge of

24 the defendant.

25         In addition to the hearing and trial evidence and

1  submissions, the in limine motions of the parties, the jury

2  verdict, the post-trial motions of the parties -- bear with me

3  just one second, please -- the Court has considered the

4  presentence report, the relevant sections of the advisory

5  sentencing guidelines, and finds that on the facts of this

6  case, the advisory sentencing guideline range as corrected by

7  the Court is reasonable and appropriate.

8      Upon considering the sentencing factors set forth in

9  18 United States Code Section 3553(a), the Court finds that

10 because of the public office that the defendant betrayed, any

11 mitigating consideration of the history and characteristics of

12 the defendant is greatly compromised; so that there is minimal

13 reason to impose a non-guideline sentence, but nevertheless,

14 some consideration of the contributions of the defendant as a

15 public servant is warranted, permitting a non-guidelines

16 sentence pursuant to 18 United States Code Section 1353(a) and

17 (a)(1).

18     It is the judgment and sentence of this Court that the

19 defendant, Larry Bobby Seabrook, be and hereby is sentenced to

20 a term of imprisonment of 60 months, concurrently on Counts

21 Four through Twelve.  Upon completion of said term of

22 imprisonment, the defendant is placed on supervised release for

23 a period of two years, concurrently on Counts Four through

24 Twelve, upon the applicable standard conditions of supervised

25 release.

1       In addition, the defendant is subject to the following

2   special terms and conditions:  One, the defendant shall pay a

3   special assessment of $800 immediately; two, no fine is

4   imposed; three, the Court has determined the loss amount

5   attributable to the defendant using Government Exhibit A to the

6   government's submission of December 13th, 2012.  The defendant

7   shall pay restitution as calculated by the Court in the amount

8   of $619,715.24, without interest, to the City of New York.

9       The defendant's obligation to make restitution shall

10  continue beyond his period of supervised release pursuant to 18

11  United States Code Section 366(m)(1)(A) and 3613(b).  The

12  defendant is to provide the Department of Probation with

13  accurate and complete financial records upon request.  The

14  defendant is to pay 20 percent of any gross monthly earnings

15  made or income received toward restitution.

16      The defendant shall forthwith forfeit all monies, land

17  and personal properties or substitutes therefor in the amount

18  of $418,252.53 as set forth in the order of forfeiture signed

19  by the Court today.  The forfeiture amount is part of the

20  restitution ordered by the Court today.

21      Mr. Seabrook, you can appeal this sentence within 14

22  days of entry of judgment if the sentence I have just imposed

23  is contrary to law.  My deputy, Mr. Delaney, will give you a

24  form which explains the process.

25      The Court has determined that the defendant is a

1  candidate for voluntary surrender to the institution designated

2  by the Bureau of Prisons on or before March 8th, 2013.

3         Is there anything else we need to deal with in this

4  case at this time?

5         MR. WILFORD:  Your Honor, I have one other application

6  we have for Mr. Seabrook, and that is if the Court would be

7  kind enough to make a recommendation to the Bureau of Prisons

8  that Mr. Seabrook be designated to a facility in the northeast

9  region, which would allow him to facilitate visitation with his

10  wife and son.

11         THE COURT:  I do make that recommendation to the

12  Bureau of Prisons.

13         MR. METZNER:  Your Honor, forgive me.  When you

14  mentioned the special assessment, I believe the special

15  assessment should be $900.

16         THE COURT:  I apologize.  You're absolutely correct.

17  The amount is $900, not $800.  Thank you, Mr. Metzner.

18         MR. METZNER:  Other than that, nothing else, your

19  Honor.  Thank you.

20         THE COURT:  All right.  This matter is adjourned.

21         MR. WILFORD:  Thank you, your Honor.

22         MR. METZNER:  Your Honor, I'm sorry.  There is an

23  underlying indictment in this case.  The government asks that

24  it be dismissed.

25         THE COURT:  I assume there's no objection to that?

D18PSEAS                    Sentence

1          MR. WILFORD:  Absolutely none, your Honor.

2          THE COURT:  That motion is granted.

3          (Adjourned)

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/17/13

# UNITED STATES DISTRICT COURT

SOUTHERN                District of                NEW YORK

UNITED STATES OF AMERICA
V.
LARRY SEABROOK

JUDGMENT IN A CRIMINAL CASE

Case Number:          S1 10 CR 87 DAB

USM Number:           63107-054

ANTHONY RICCO AND EDWARD WILFORD
Defendant's Attorney

## THE DEFENDANT:

____ pleaded guilty to count(s) _____

____ pleaded nolo contendere to _____
which was accepted by the court.

X    was found guilty on count(s)  FOUR THROUGH TWELVE _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | SEE ATTACHED | | |

The defendant is sentenced as provided in              of this judgment. The sentence is imposed
pages          2-6
pursuant to the Sentencing Reform Act of 1984.

X    The defendant has been found not guilty on          SEE ATTACHED _____

X    Count(s)    UNDERLYING        IS    X    dismissed.
                 INDICTMENT

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

JANUARY 8, 2013
Date of Imposition of Judgment

*Deborah A. Batts*
Signature of Judge

DEBORAH A. BATTS        U.S.D.J.
Name and Title of Judge

January 17, 2013
Date

## Counts Defendant Was Found Guilty of After a Plea of Not Guilty

Count  4: Conspiracy to Commit Mail and Wire Fraud in Connection with NYC Council's Discretionary Funding (18 USC § 1349) Class C Felony.
Offense ended 2009

Count 5: Mail Fraud in Connection with the NYC Council's Discretionary Funding (18 USC § 1341) Class C Felony
Offense ended 2009

Count6: Wire Fraud in Connection with NYC Discretionary Funding (18 USC § 1343) Class C  Felony
Offense ended 2009

Count 7: Conspiracy to Commit Mail and Wire Fraud in Connection with the NYC Council's  FDNY Fire Diversity/Recruitment Initiative (18 USC §1349) Class C Felony
Offense ended 2008

Count 8: Mail Fraud in Connection with the NYC Council's FDNY Fire Diversity/Recruitment Initiative (18 USC § 1341) Class C Felony
Offense ended 2008

Count 9: Wire Fraud in Connection with the NYC Council's FDNY Fire Diversity/Recruitment Initiative (18 USC § 1343) Class Felony
Offense ended 2008

Count 10: Conspiracy to Defraud a Non-Profit Organization in Connection with a Job Placement Program Funded by the NYC Council (18 USC §1349) Class C Felony
Offense ended 2008

Count 11: Mail Fraud in Connection with a Job Placement Program Funded by the NYC Council (18 USC § 1349) Class C Felony
Offense ended 2008

Count 12: Wire Fraud in Connection with a Job Placement Program Funded by the NYC Council (18 USC § 1343)                    Class  C Felony
Offense ended 2008

## Counts Defendant Was Found Not Guilty Of

Count 1: 18 USC § 666(a)(1)(B) and (2)
Offense ended 2009

Count 2: 18 USC § 1952(a)(1) and (3) and (2)
Offense ended 2009

Count 3: 18 USC 1956(a)(1)(B)(I) and (2)
Offense ended 2009

# A268

🖎AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 2

|  | Judgment — Page 2 of 6 |
|---|---|

DEFENDANT:     LARRY SEABROOK
CASE NUMBER:   S1 10 CR. 87 DAB

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

SIXTY MONTHS, CONCURRENTLY ON COUNTS FOUR THROUGH TWELVE.

The Defendant is notified of his right to appeal.

x    The court makes the following recommendations to the Bureau of Prisons:

THE COURT RECOMMENDS TO THE BUREAU OF PRISONS THAT THEY DESIGNATE MR. SEABROOK TO AN INSTITUTION IN THE NORTHEAST.

The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

   ☐    at _____ ☐ a.m. ☐ p.m.   on _____ .

   ☐    as notified by the United States Marshal.

X    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   before 2      ON OR BEFORE 3/8/2013      .

   ☐    as notified by the United States Marshal.

   ☐    as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

 

 

Defendant delivered _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

# A269

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:          LARRY SEABROOK
CASE NUMBER:     S1 10 CR. 87 DAB

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

# TWO YEARS, CONCURRENTLY ON COUNTS FOUR THROUGH TWELVE.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if

☐   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

# A270

DEFENDANT:     LARRY SEABROOK
CASE NUMBER:    S1 10 CR. 87 DAB

## SPECIAL CONDITIONS OF SUPERVISION

The Court has determined the loss amount attributable to the Defendant using Government Exhibit A to the Government's submission of December 13, 2012. The Defendant shall pay restitution as calculated by the Court in the amount of $619,715.24, without interest, to the City of New York. The Defendant's obligation to make restitution shall continue beyond his period of supervised release, pursuant to 18 U.S.C. § 3664(m)(1)(A) and § 3613(b).

The Defendant is to provide the Department of Probation with accurate and complete financial records upon request. The Defendant is to pay 20% of any gross monthly earnings made or income received toward restitution.

The Defendant shall forthwith forfeit all monies, land and personal property or substitutes therefore in the amount of $418,252.53 as set forth in the Order of Forfeiture signed by the Court today. The forfeiture amount is part of the restitution ordered by the Court today.


**FORFEITURE ORDER IS ATTACHED.**

# A271

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
        Sheet 5 — Criminal Monetary Penalties

|  |  |  |
|---|---|---|
|  |  | Judgment — Page   5   of   6   |

**DEFENDANT:**      **LARRY SEABROOK**
**CASE NUMBER:**   **S1 10 CR. 87 DAB**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 900.00 | $ NO FINE | $ 619,715.24 |

☐   The determination of restitution is deferred   _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

x   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(I), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| CITY OF NEW YORK |  | $619,715.24 |  |

| **TOTALS** | $     0 | $     619715.24 |
|---|---|---|

☐   Restitution amount ordered pursuant to plea agreement   _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    **X**  the interest requirement is waived for   ☐ fine   **X**  restitution.

    ☐  the interest requirement for   ☐ fine   ☐ restitution is modified as follows:

    **FORFEITURE ORDER IS ATTACHED**

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
            Sheet 6 — Schedule of Payments

| | Judgment — Page | 6 | of | 6 |
|---|---|---|---|---|

DEFENDANT:     **LARRY SEABROOK**
CASE NUMBER:   **S1 10 CR. 87 DAB**

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A  ☐  Lump sum payment of $_____ due immediately, balance due

     ☐  not later than _____ , or
     ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $_____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $_____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  X  Special instructions regarding the payment of criminal monetary penalties:

     **The Defendant shall pay a special assessment of $900 immediately.  The Defendant is to pay 20 percent of any gross monthly earnings made or income received towards restitution.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

     The defendant shall forfeit the defendant's interest in the following property to the United States:

     **FORFEITURE ORDER IS ATTACHED**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# A273

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :        ORDER OF FORFEITURE
                                    :
          -v.-                      :        S1 10 Cr. 87 (DAB)
                                    :
LARRY SEABROOK,                     :
                                    :
          Defendant.                :
- - - - - - - - - - - - - - - - - x
```

WHEREAS, on or about September 13, 2011, LARRY SEABROOK (the "defendant"), was charged in a twelve-count Superseding Indictment, S1 10 Cr. 87 (DAB) (the "Indictment"), with receiving corrupt payments, in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2 (Count One); use of interstate facilities to solicit and receive corrupt payments, in violation of 18 U.S.C. §§ 1952(a)(1) and (3), and 2 (Count Two); money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Count Three); conspiracy to commit fraud in connection with the New York City Council Discretionary Funding, in violation of 18 U.S.C. § 1349 (Count Four); mail fraud in connection with New York City Council Discretionary Funding, in violation of 18 U.S.C. §§ 1341 and 2 (Count Five); wire fraud in connection with New York City Council Discretionary Funding, in violation of 18 U.S.C. §§ 1343 and 2 (Count Six); conspiracy to commit fraud in connection with the Council's FDNY Fire Diversity/Recruitment Initiative, in violation of 18 U.S.C. § 1349 (Count Seven); mail fraud in connection with the Council's FDNY Fire Diversity/Recruitment Initiative, in violation of 18 U.S.C. §§

# A274

1341 and 2 (Count Eight); wire fraud in connection with the Council's FDNY Fire Diversity/Recruitment Initiative, in violation of 18 U.S.C. §§ 1343 and 2 (Count Nine); conspiracy to defraud a non-profit organization in connection with a job placement program funded by the Council, in violation of 18 U.S.C. §§ 1349 (Count Ten); mail fraud in connection with a job placement program funded by the Council, in violation of 18 U.S.C. §§ 1341 and 2 (Count Eleven); and wire fraud in connection with a job placement program funded by the Council, in violation of 18 U.S.C. §§ 1343 and 2 (Count Twelve);

WHEREAS, the Indictment included a forfeiture allegation, seeking forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, of all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Twelve of the Indictment;

WHEREAS, on or about July 26, 2012, the jury returned a guilty verdict against the defendant as to Counts Four through Twelve of the Indictment;

WHEREAS, the defendant was sentenced on or about January 8, 2013 and ordered to forfeit, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, $418,252.53 in United States currency, representing property, real or personal, constituting or

# A275

derived from proceeds traceable to the commission of the offenses alleged in Counts Four through Twelve of the Indictment;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    As a result of the offenses charged in Counts Four through Twelve of the Indictment, for which the defendant has been convicted, a money judgment in the amount of $418,252.53 in United States currency (the "Money Judgment") shall be entered against the defendant.

2.    Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Order of Forfeiture, this Order is final as to the defendant, LARRY SEABROOK, and shall be deemed part of the sentence of the defendant, and shall be included in the judgment of conviction therewith.

3.    All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance to the United States Marshals Service, and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the defendant's name and case number.

4.    Upon execution of this Order of Forfeiture, and pursuant to 21 U.S.C. § 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment

# A276

in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

5.   Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Order, the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of forfeitable property, including depositions, interrogatories, requests for production of documents and the issuance of subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

6.   The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

7.   The Clerk of the Court shall forward three certified copies of this Order to Assistant United States Attorney Sharon Cohen Levin, Chief of the Asset Forfeiture Unit, United States Attorney's Office, One St. Andrew's Plaza, New York, New York 10007.


SO ORDERED:

_Deborah A. Batts_                          _January 8, 2013_
HONORABLE DEBORAH A. BATTS          DATE
UNITED STATES DISTRICT JUDGE

4

# A277

| | Net | Gross | EMP'ER SS @ 7.65% |
|---|---|---|---|
| **Payments to Friends & Family** | | | |
| **GJG** | | | |
| FDNY AS EXECUTIVE DIRECTOR | 20,090.64 | 25,000.00 | 1,912.50 |
| FDNY - CKS ISSUED TO GJG IN ADDITION TO SALARY | 15,088.83 | 15,088.83 | |
| JTBO - AS EXECUTIVE DIRECTOR | 43,977.01 | 60,000.00 | 4,590.00 |
| SBS X05-960 - AS EXECUTIVE DIRECTOR | 52,213.96 | 70,833.20 | 5,418.74 |
| SBS X05-960 - OTHER CKS | 6,015.00 | 6,015.00 | |
| SBS X06-960 - AS EXECUTIVE DIRECTOR | 66,139.88 | 82,852.69 | 6,338.23 |
| CKS FROM NEBRC A/CS ($6,000 + $40 + $6,000 - $1097.50 [REPYMT: $135.96 + 961.54]) - AS CONSULTANT | 10,942.50 | 10,942.50 | |
| CKS FROM AALCHF A/CS ($13,000 + 541.57 - $3000 REPYMT) | 10,541.57 | 10,541.57 | |
| AALCHF #18540D AS EXECUTIVE DIRECTOR | 12,069.66 | 19,000.00 | 1,453.50 |
| AALCHF #18536A | 2,500.00 | 2,500.00 | |
| AALCHF #12120B | 3,400.00 | 3,400.00 | |
| MERCY #33172B | 233.00 | 233.00 | |
| AALCHF #12120C ($3000 + $1000 + 1500+2000 + 1581.06 + 2000 + 2000) | 13,081.06 | 13,081.06 | |
| NEBRC #12171C ($1500 + $2000 + $1000 + $2000) | 6,500.00 | 6,500.00 | |
| MERCY #33172C | 63.98 | 63.98 | |
| AALCHF #18540C ($2000 + $2000 + $2000 + $500) | 6,500.00 | 6,500.00 | |
| MERCY #33172D | 1,394.88 | 1,394.88 | |
| MERCY #77914E | 25,045.93 | 32,496.10 | 2,485.95 |
| AABUDP | 8,284.37 | 8,284.37 | |
| SUBTOTAL | 304,082.27 | | |
| | | | |
| **PRISCILLA JENKINS** | | | |
| FDNY | 10,000.00 | 10,000.00 | |
| CKS FROM AALCHF A/CS ($1009.30 + $2000 + $2500 + 4869.70) | 10,379.00 | 10,379.00 | |
| CKS FROM NEBRC A/CS ($1000 + 9000 + 1000) | 11,000.00 | 11,000.00 | |
| SBS X05-960 | 10,000.00 | 10,000.00 | |
| SBS X06-960 AS JOB DEVELOPER | 13,748.91 | 17,500.00 | 1,338.75 |
| MERCY #77914E | 7,500.00 | 7,500.00 | |
| MERCY #33172C | 121.00 | 121.00 | |
| SUBTOTAL | 62,748.91 | | |
| | | | |
| **BETTY BURNEY** | | | |
| NEBRC #12171 | 2,000.00 | 2,000.00 | |
| AALCHF 18540D | 7,200.00 | 7,200.00 | |
| AALCH 18540D ALSO HAD A CHARGE OF $4,398 (LABELLED AS BETTY BURNEY) W/C THE CITY PAID TO NEBRC (NYC CK #022520553 $34,016.39) ALTHOUGH NO CK FROM AALCHF WAS FOUND TO BE ISSUED TO BURNEY | | 4,398.00 | |
| SUBTOTAL | 9,200.00 | | |
| | | | |
| **OLIVER SEABROOK** | | | |
| AABUDP ($17,300 - $8500 REPYMT) | 8,800.00 | 8,800.00 | |
| AALCHF | 2,500.00 | 2,500.00 | |
| NEBRC | 41,906.50 | 70,000.00 | 5,355.00 |
| SUBTOTAL | 53,206.50 | | |
| | | | |
| **KEITH JOHNSON** | | | |
| FDNY SALARY ($18,518.81 NET + $1,184 CHILD SUPPORT) - NO INFO ON GROSS PAY SO THE NET PAY $ WAS USED TO CALCULATE THE EMPL'ER PORTION OF SS | 19,702.81 | 19,702.81 | 1,507.26 |
| FDNY CK | 2,700.00 | 2,700.00 | |
| JTBO (GROSS BASED ON BUDGET; INFO: HE RESIGNED AS OF 02/01/08) | 7,665.82 | 8,554.00 | 654.38 |
| CKS FROM AALCHF A/CS | 1,000.00 | 1,000.00 | |
| CKS FROM NEBRC A/CS ($200 + $500) | 700.00 | 700.00 | |
| SBS X05-960 | 1,000.00 | 1,000.00 | |
| AALCHF #18540D | 600.00 | 600.00 | |
| NEBRC #77856D | 17,278.06 | 25,000.64 | 1,912.55 |
| NEBRC #12171C | 2,344.00 | 2,344.00 | |
| AALCHF #18540C | 1,000.00 | 1,000.00 | |
| MERCY #33172C | 500.00 | 500.00 | |
| AABUDP | 500.00 | 500.00 | |
| DIFF B/W $54,990.69 & $51850.34 IN EXHIBIT IS BEC OF ADDL CWE RECORDS + CHILD SUPPORT ADDED | 54,990.69 | | |
| | | | |
| **MICHAEL DEAS** | | | |
| MERCY #77914E | 3,000.00 | 3,000.00 | |

GOVERNMENT EXHIBIT

A (ID)

# A278

| | | Net | Gross | EMP'ER SS @ 7.65% |
|---|---|---|---|---|
| | CK FROM AALCHF A/C | 350.00 | 350.00 | |
| | SUBTOTAL | 3,350.00 | | |
| | | | | |
| CHYLIA PILE | | | | |
| | NEBRC #12171C | 750.00 | 750.00 | |
| | AALCHF #18540D | 200.00 | 200.00 | |
| | CKS FROM AALCHF A/CS | 500.00 | 500.00 | |
| | SUBTOTAL | 1,450.00 | | |
| | | | | |
| TYRONE DUREN | | | | |
| | FDNY | 26,450.22 | 35,000.00 | 2,677.50 |
| | JTBO | 35,344.88 | 35,344.88 | |
| | SBS #X05-960 | 32,320.48 | 32,320.48 | |
| | CKS FROM NEBRC A/CS ($500 + $3000 + $347.05 + $3000 REIMB) | 847.05 | 847.05 | |
| | CKS FROM AALCHF A/CS | 19,207.63 | 19,207.63 | |
| | DIFF $347.05 ($114170.26 - $113,823.21) - CK FROM FDNY NOT ADDED TO THE PYMTS TO F&F | | | |
| | EXHIBIT | 114,170.26 | | |
| | | | | |
| LEKIGEE GRANT | | | | |
| | SBS X05-960 | 1,000.00 | 1,000.00 | |
| | AALCHF #18540C | 1,000.00 | 1,000.00 | |
| | AALCHF #12120C | 1,400.00 | 1,400.00 | |
| | NEBRC #12171C | 2,350.00 | 2,350.00 | |
| | MERCY #33172C | 500.00 | 500.00 | |
| | SUBTOTAL | 6,250.00 | | 35,644.37 |
| FRINGE BENEFITS - RELATED TO PAYROLL PYMTS TO FRIENDS & FAMILIES | | | | |
| | EMPLOYER PORTION OF SS PYMTS (@ 7.65% OF SALARY) | | 35,644.37 | |
| | HEALTH INSURANCE - EMPIRE BLUE CROSS BLUE SHIELD (FOR GJG ONLY) | | 8,377.89 | |
| | | | | |
| SBS AUDIT DISALLOWANCE: (NEBRC DID NOT PAY SBS BACK) | | | | |
| | X05-960 (AMT DISALLOWED PER AUDIT: $19,260.69 - $6,000 TO GJG INCLUDED ABOVE) | | 13,260.69 | |
| | X06-960 (AMT DISALLOWED PER AUDIT: $39,928.69 - $18,766.75 PERSONNEL & FRINGE RELATED- | | | |
| | $301 TUCK AWAY INCL'D BELOW - $3,500 SAM WHOLESALE INCL'D BELOW) | | 17,360.94 | |
| | | | | |
| FALSE INFO IN THE FDNY BILLING | | | | |
| | NEWPAPER ADS | 3,016.00 | 3,016.00 | |
| | DAILY CHALLENGE NEWS | 2,798.00 | 2,798.00 | |
| | COOP CITY TIMES | 360.00 | 360.00 | |
| | COOP CITY NEWS ($588 LESS $800 ACTUAL PYMT) | (212.00) | (212.00) | |
| | MEDIA/RADIO | 6,500.00 | 6,500.00 | |
| | VAN DANNY INC (FOR FLYER & BANNER) - NO PYMT TO VAN DANNY FOUND | 5,500.00 | 5,500.00 | |
| | ENTERPRISE RENT A CAR (PER SUBP DOCS, RENTAL WAS FOR GJG) | 8,095.54 | 8,095.54 | |
| | CIRCUIT CITY | 3,355.94 | 3,355.94 | |
| | | | | |
| QUESTIONABLE JTBO DISBURSEMENTS | | | | |
| | PC RICHARD | | 4,682.49 | |
| | ARLENE CARDEN (DUREN'S WIFE) | 10,852.80 | 12,566.00 | |
| | ARLENE CARDEN (DUREN'S WIFE) 7.65% EMPLOYER'S SS CONTRIBUTION (FRINGE) OF $12,566 = | | | |
| | $961.30 | | 961.30 | |
| | | | | |
| COMPUTER PURCHASES AT END OF FISCAL YEAR: | | | | |
| | SBS X05-960 ($4278 + $11019.98 + 565.86 + 610.85 + 479.40 + 861.18) | 17,815.27 | 17,815.27 | |
| | MERCY #33172B | 1,056.95 | 1,056.95 | |
| | MERCY #33172E | 1,373.69 | 1,373.69 | |
| | PC RICHARD #18540D | 3,064.66 | 3,064.66 | |
| | | | | |
| EXPENSES - DOUBLE BILLED & PAID BY NYC (NEBRC: $10,086.87 + AALCHF $24,347.87) | | | 34,434.70 | |
| | | | | |
| EXPENSES - BILLED & PAID BY NYC BUT NO EVIDENCE THAT THE NFP PAID THE VENDOR | | | 66,687.49 | |
| | (NEBRC: $8,059.39 + AALCHF $58,628.10) | | | |
| | | | | |
| QUESTIONABLE BILLINGS/EXPENSES PAID RELATED TO DISCRETIONARY FUNDS | | | | |
| | MATTHEW GILBERT ALUMNI (FROM AALCHF: $1,000 EA ON 1/5/06, 1/3/07, 12/31/07 & $500 ON | | | |
| | 1/8/08 + CKS TO LEE FAYSON IN JAN '08 $1,042+ $384) | | 4,926.00 | |
| | CKS ISSUED TO ALEXI LEWIS (NEBRC $2,350 + AALCHF $2,900) - MARIA DEL CARMEN'S SON | | 5,250.00 | |
| | CKS TO BELLA MUIR, GJG'S MOM IN PA (NEBDC $200 ON 8/13/04; NEBRC $575 ON 4/7/05 & | | | |
| | $211.89 ON 2/16/06) | | 986.89 | |

# A279

| | | | Net | Gross | EMP'ER SS @ 7.65% |
|---|---|---|---|---|---|
| | | CKS DOUBLE ENDORSED BY LAVERNE SEABROOK (LS EX-WIFE) TO RAVEN HAMILTON $300 IN JULY 2007 & JEANINE CROSLIN $150 IN OCT 2009 | | 450.00 | |
| | | CONTRIBUTION TO ADDICTS REHABILITATION CENTER ($700 ON 1/19/03, $1,000 ON 1/29/07 FROM AALCHF & $600 ON 5/12/07 FROM NEBRC) | | 2,300.00 | |
| | | AALCHF CONTRIBUTION TO ARC GOSPEL CHOIR ON 2/1/08 | | 1,000.00 | |
| | | AALCHF PYMT TO BLUMBERG EXCELSIOR ON 4/11/07 FOR INCORPORATION OF "MARK TERRACE SENIORS" (PER PREVIOUS FMS SEARCH, NO CONTRACT W/ NYC) | | 447.07 | |
| | | NEBRC PURCHASE @ GAMESTOP ON 5/21/07 | | 86.68 | |
| | | NEBRC PYMT TO GIOVANNI ON 4/29/07. GIOVANNI IS A BAR PER NYS LIQUOR AUTHORITY WEBSITE | | 981.55 | |
| | | NEBRC PYMT TO NYS ASSN OF BLACK ON 2/20/07 | | 600.00 | |
| | | NEBRC PYMTS TO NYS DOS CORPS IN DEC 2006 & MAY 2007 | | 430.00 | |
| | | AALCHF PYMTS TO TUCK IT AWAY STORAGE FROM JULY 2002 TO JULY 2008 - PER DUREN INTERVIEW, TUCK AWAY WAS USED TO STORE OLD EQUIPMENT | | 12,792.90 | |
| | | NEBRC PYMTS TO TUCK IT AWAY STORAGE FROM FEB 2005 TO APRIL 2007 (INCLUDES $301 DISALLOWED BY SBS) | | 6,210.58 | |
| | | NEBRC PYMTS TO SAM'S WHOLESALE TOTALING $9,700: $3,500 ($2,500 ON 9/29/05 & $1,000 ON 10/21/05 BOTH DISALLOWED BY SBS AUDITOR). PER INVOICES, CATERING INCLUDING SODA, JUICE, WATER, RICE, BAKED CHICKEN, FISH, VEGETABLES, AND CORN BREAD FOR THE EDUCATIONAL SUMMIT $6,200 ON 6/15/06 - NO INFO FOR WHICH CONTRACT & NO INVOICE | | 9,700.00 | |
| | | AALCHF PYMT TO WINDHAM PROFESSIONALS INC ON 9/14/06 - (A COLLECTION AGENCY) | | 5,044.88 | |
| RENT OVERBILLING | | | | 96,772.00 | |
| | | | | | |
| | | GRAND TOTAL | | 1,128,175.14 | |

$20,090.64
$15,088.83
$43,977.01
$52,213.96
$66,139.88
$10,942.50
$12,069.66
$10,000.00
$13,748.91
$2,000.00
$7,200.00
$53,206.50
$19,702.81
$7,665.82
$26,450.22
$35,344.88
$32,320.48
$35,644.37
$3,016.00
$2,798.00
$360.00
$6,500.00
$5,500.00
$8,095.54
$3,355.94
$4,682.49
$17,815.27
$1,056.95
$1,373.69
$3,064.66
$450.00
$86.68
$981.55
$96,772.00

$619,715.24

**A281**

# NOTICE OF APPEAL

### United States District Court

_Southern_ District of _New York_

Caption:

_United States of America_

_Larry Seabrook_

Docket No.: _10-Cr-87_

_Deborah A. Batts_
(District Court Judge)

Notice is hereby given that ___ _Larry Seabrook_ ___ appeals to the United States Court of Appeals for the Second Circuit from the judgment ✓, other | _____ (specify)

entered in this action on _____ (date)

This appeal concerns: Conviction only | _ | Sentence only | _ | Conviction & Sentence | ✓ | Other | _

Defendant found guilty by plea | ✓ | trial | | N/A |

Offense occurred after November 1, 1987? Yes | ✓ | No | | N/A |

Date of sentence: _January 8, 2013_ N/A | |

Bail/Jail Disposition: Committed | ✓ | Not committed | | N/A |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: JAN 11 2013

Appellant is represented by counsel? Yes | ✓ | No | | If yes, provide the following information:

Defendant's Counsel: _Anthony L. Ricco and Edward David Wilford_

Counsel's Address: _20 Vesey St, Suite 400_
_NYC, NY 10007_

Counsel's Phone: _(212) 791-3919_ _(212)528-2741_

Assistant U.S. Attorney: _KARL N. Metzner_

AUSA's Address: _One Saint Andrew's Plaza_
_NYC, NY 10007_

AUSA's Phone: _(212) 637-2200_

Signature

# A282

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
================================X

UNITED STATES OF AMERICA

     -Against-

LARRY SEABROOK,

                 Defendant.

================================X

ORDER TO SHOW CAUSE

10-cr-00087*(DAB)*

      Upon the Defendant Larry Seabrook's motion for stay of execution of sentence and stay of his March 8, 2013 surrender date pursuant to 18 U.S.C. § 3143 (b)(1); upon the defendant's Motion for a new trial if the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds of newly discovered evidence; upon the affirmation of Fitzmore Harris, Esq., the affidavit of Oliver Seabrook, the affidavit of Donald Frangipani, the accompanying memorandum of law, the indictment, trial record, sentencing minutes, and all other prior proceedings, now therefore: IT IS ORDERED that:

      1. The United States Attorney for the Southern District of New York, show cause before this court at room_____, in the United States Court House at 500 Pearl Street, State of New York, on March_____, 2013 at_____, in the noon thereof, or as soon thereafter as counsel may be heard and show cause why a stay of execution of sentence and stay of his March 8, 2013 surrender date pursuant to 18 U.S.C. § 3143 (b)(1) should not be granted;

      2. Within_____ days of receipt of this order, the United States Attorney shall serve a copy of his return on the defendant's attorney herein and shall file the original thereof, with proof of such service, with the Clerk of this Court;

      3. Defendant, within_____ days of the date of receipt by him, of the copy of the return of the United States Attorney, shall file his reply, if any, with proof of such service, with the Clerk of this Court;

      4. Service of a copy of this Order shall be made by Defendant's Attorney Fitzmore Harris by forwarding a copy thereof, together with a copy of the supporting papers, to the United States Attorney no later than_____; and it is further

      ORDERED that Pending a hearing on all of the Defendant's applications, Defendant's surrender date of March 8, 2013 is hereby stayed; and

Dated: March _____, 2013.

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=============================X                    AFFIRMATION OF COUNSEL
UNITED STATES OF AMERICA

     -Against-                                      10-cr-00087*(DAB)*

LARRY SEABROOK,

                 Defendant.
=============================X

     FITZMORE H. HARRIS, an attorney duly licensed to practice law in the State of New York and a member of the bar of this Court hereby declares under penalties of perjury that the following facts are true:

     1. I represent the Defendant Larry Seabrook in his current motion to vacate his conviction, pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

     2. I am retained pro bono by Larry Seabrook for the specific purpose of filing and litigating the instant motion and I am fully familiar with the evidence adduced at trial and arguments made at trial; as well as the facts and circumstances necessitating the instant motion from discussions with the affiants named herein as well as by reviewing the trial transcript as well as the documents referred to in attached affidavits.

     3. The facts pertinent to resolution of Mr. Seabrook's § Rule 33 motion are set forth in the attached affidavits, accompanying memorandum of law, supporting exhibits and attachments.

### *THE NEED FOR AN ORDER TO SHOW CAUSE AND IMMEDIATE ACTION*

     4. This motion is brought on by order to show cause and among other things an order vacating his judgment of conviction and grant a new trial in the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure on the grounds of newly discovered evidence; as well as an order staying execution of sentence and for staying of March 8, 2013 surrender date pending

the outcome of the instant motion and for release pending appeal pursuant to 18U.S.C. § 3143 (b)(1).

5. The reason for bringing this motion by Oder to Show Cause and not by a Notice of Motion is because the defendant is set to report for execution of his sentence on March 8, 2013 and if this motion was brought by notice there simply would not be sufficient time to move for the stay of execution of the sentence and for a stay of the reporting date.

6. The motion is brought at this time because all of the documents necessary for the filing of the instant motion were not turned over to the affirmant until February 12, 2013. Due to the fact that the records are voluminous and your affirmant had to interview the Defendant as well as the other Affiants, and although your affirmant had to work all night at times, the motion could not be completed with sufficient time to seek the remedies requested herein.

7. No prior request for the relief requested in the annexed Order to Show Cause has been made to this or to any other court.

WHEREFORE, I respectfully request that this court grant the relief sought in the annexed Order to Show Cause and such other and further relief as this Court may seem just and proper.

An evidentiary hearing is requested.

Dated: New York, New York
     March 1, 2013

Fitzmore Harris, Esq.
Attorney *Pro Bono* for Defendant
Larry Seabrook
160 Broadway Suite 501
New York, New York 10038
Phone No: 212-406-0998
Fax: 212-406-0874
Email: hfhpc@ymail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=============================X          10-cr-00087*(DAB)*

UNITED STATES OF AMERICA

    -Against-                                   **AFFIDAVIT OF**
                                              **OLIVER SEABROOK**
LARRY SEABROOK,
              Defendant.
=============================X

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF NEW YORK  )

OLIVER SEABROOK, being duly sworn, deposes and says:

I am over the age of eighteen (18) years of age and reside in New York County. I am the brother of Larry Seabrook , the defendant named in the above-entitled action and I am fully familiar with the facts and circumstances surrounding the motion for a new trial based on my first hand knowledge.

I submit this affidavit in support of the instant motion for a new trial by defendant Larry Seabrook ("Seabrook"). I further certify that myself, acting along with Carl Green, the former Executive Director of the Bronx African-American Chamber of Commerce ("BAACC") are the individuals who found the questioned documents such as the time sheets, checks and other documentation from the Fire Department of New York ("FDNY") Fire Diversity Program ("FDP") with which Tyrone Mitch Duren ("Duren") and Phelisha Jude ("Jude") were associated.

Some of the time sheets were found during the course of the second trial, but photocopies of the negotiated checks were found after the second trial had concluded. The documents were later surrendered to Donald Frangipani ("Frangipani") who examined them and found that Jude and Duren forged Carden's signature on certain checks and time sheets. The discovery of the forged documents by Frangipani later lead to the conclusion that both Duren and Jude were involved in a fraudulent scheme to divert funds from the FDP for their own personal use and not for the use for which the funds were intended. The subsequent discovery of the fraudulent

scheme involving Duren and Jude is the newly discovered evidence upon which this application for a new trial is based.

For the past four years, I have been actively involved in the Seabrook defense team's efforts. One of my functions was to search for and obtain documentary evidence which would be used as part of Seabrook's defense case. Furthermore, I was present in court for both the first and second trial on a daily basis and I also monitored the evidence which was presented by the Government at both trials.

During the course of the second Seabrook trial, on his direct examination Duren testified that his "ex-wife" (Carden) worked in the North East Bronx Redevelopment Corporation's (NEBRC) FDNY Fire Diversity Program. (Tr[1]. 1350). As a person who was familiar with the FDP, I knew that Carden never worked in that program. I am familiar with the FDP because I had also worked at NEBRC during the year 2005 through 2006 as the Program Director for its Immigration Initiative; and during that time I knew that Carden worked as a Job Readiness Instructor in NEBRC's Jobs to Build On ("JTBO") Program. As a matter of fact, I had the responsibility of facilitating the entrance and exit of Carden during the period of her employment at NEBRC, and I knew at the time that she did not work in the FDP as a job developer. I knew then that Duren had given false testimony and perjured herself on the witness stand.

Based on Duren's false testimony, I immediately conferred with Carl Green; the individual whom I had previously assisted in moving the properties and documents of the BAACC and NEBRC from their respective offices once their offices had been closed in 2009. Green and myself later transported the property and documents to a storage facility.

Green who was also present in court during Duren's direct testimony agreed to assist me in conducting a search of NEBRC's records for the specific purpose of verifying Carden's employment history with NEBRC. Significantly, both the BAACC and NEBRC's records were in storage at the Bronx Miracle Gospel Tabernacle's Community Center, located at 815 Burke Avenue, Bronx, New York 10067.

On July 8, 2012 Green and myself conducted a thorough search of the stored records and that was when we found three of the aforementioned questioned time sheets which we promptly

---

[1]The letters Tr. Followed by numbers refer to relevant portions of the trial transcript.

turned over to Seabrook for his defense attorneys to utilized on the following day during Duren's cross examination. However, Seabrook's defense attorneys stated that it was too late to enter new evidence.

Following the conclusion of the second trial, from August 6, 2012 to September 29, 2012, Green and I conducted a more extensive search which yielded a series of previously negotiated checks, twelve (12) additional time sheets, and other documentation such as employment registers, job descriptions, and payment registers which were all related to the FDP. A careful search of NEBRC's records revealed that Carden never worked for the FDP at any time. All of the documents were turned over to Seabrook who then turned over the documents to his defense team. After the end of the second trial, the photocopied checks and time sheets were turned over to Frangipani for his forensic examination. Exact photocopies of the questioned checks which were found are attached hereto as **Exhibits "2-1 to 2-13"** and a photocopy of a questioned invoice is attached hereto as **Exhibit "2-14"**. Exact photocopies of the questioned time sheets are attached hereto as **Exhibits "3-1 to 3-15"**.

After examining photocopies of the questioned time sheets, Frangipani submitted a report in which he stated that after a careful examination the questioned time sheets, in his professional opinion, the questioned  time sheets were not prepared by Arlene Carden. It is also his further opinion that Tyrone M. Duren is also the author of time sheets which Frangipani identified as Q-19-Q-25.

The expression of Frangipani's opinion that Duren made up time sheets on which he forged Carden's name, clearly indicated that Duren had also given perjured testimony and perjured himself during the second trial when he was subject to cross examination by Anthony Ricco and the following transpired:

```
22   Q.  Now, you testified -- you stated today that you testified
23        pursuant to a grant of immunity, correct?
24   A.  Correct.
25   Q.  And that you would only be testifying unless you had that
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                          1418
     C759SEA1              Duren - cross
 1        grant of immunity; isn't that correct?
 2   A.  Correct.
```

3

3   Q.  Because in connection with those opportunities, the jobs
4   that you held, you, Mr. Duren, committed criminal acts; isn't
5   that correct?
6   A.  The only criminal act that I committed was inflating the
7   time sheets.
8        MR. JACKSON:  Objection, Judge.
9        THE COURT:  Sustained.
10        Don't answer.  Move on.
11   Q.  But you are testifying here pursuant to an immunity
12   agreement, right?
13   A.  Yes.
14   Q.  And that immunity agreement allows you to testify about
15   everything that you did, correct?
16   A.  Correct.
17   Q.  It only -- it does not protect you, however, if you testify
18   falsely?
19   A.  That's correct.

Clearly, during his cross examination at the second trial, Duren testified that the only criminal act that he committed in connection with the jobs he held with NEBRC was inflating the  time sheets. However, based on Frangipani's report, Duren had committed other criminal acts by making forged time sheets in Carden's name and by also forging Carden's signature on the time sheets. Based on Frangipani's findings, it became clear that in addition to giving perjured testimony during his direct examination, Duren also gave false testimony and perjured himself during his cross examination. A copy of Duren's transcript pages (Tr. 1350, 1351, 1418) is attached hereto as **Exhibit "4"**.

As have also been mentioned herein, after the conclusion of the second trial, photocopies of negotiated checks were also turned over to Frangipani for forensic examination, and after examining those documents, Frangipani concluded that, it was his professional opinion within a reasonable degree of forensic certainty that:

a) Arlene Carden is "eliminated" as author of all the questioned documents
b) It is highly probable that Tyrone M. Duren endorsed Exhibit Q-1 & Q-2
c) It is highly probable that Phelisha Jude endorsed Exhibit Q-4, Q-5, Q-6, Q-7, Q-8, Q-9, Q-10, Q-11, Q-12 (entire check), Q-13 (entire check), Q-14 (entire sheet), Q-15 and Q-16 (time sheet).

As Mr. Green and myself investigated further, it became more clear to us that is was not only Duren who had perjured himself while testifying at trial, but Jude had also perjured herself

while testifying at trial because during direct examination of Jude at the second trial the following transpired:

16   Q. Ms. Jude, let's turn back to consultant contracts. You
17   testified that you forged signatures on some contracts,
18   correct?
19   A. Yes.
20   Q. Did you forge signatures on any other documents?
21   A. On checks as well.
22   Q. Whose signatures --
23   A. Oh and subleases. Sorry. Rent subleases.
24   Q. Whose signatures did you forge on checks and rent
25   subleases?
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                        363
      C6l9sea3          Jude - direct
1    A. Roger Witherspoon, T. Mitch Duren. I had permission by
2    Gloria to sign her name on subleases. I signed David Frazier,
3    Mitch Duren, William Low, and then I have permission to sign
4    Gloria Jones-Grant.
5    Q. Other than Gloria Jones-Grant, of all the names that you
6    mentioned, did you receive permission from any of those people
7    to sign their names?
8    A. No, I did not.

Clearly, based on Frangipani's findings and conclusions that Jude signed Carden's signature on certain checks, there is little doubt that during her direct testimony, Jude perjured herself by failing to testify that she had also forged Carden's signature on certain checks for the only signatures which Jude admitted to forging on checks and rent subleases were David Frazier, Roger Witherspoon, Mitch Duren, William Low, and Gloria Jones-Grant. A copy of Jude's transcript pages (Tr. 362, 363) is attached hereto as **Exhibit "5"**.

In addition to what has been disclosed herein, Mr. Green and myself also conducted a search of NEBRC statements from Chase Bank with respect to funds for the FDNY Diversity Program ("FDP") and the Jobs to Build On ("JTBO") Program; and we were startled to discover that between December 19 through December 31, 2007, Duren & Jude transferred $84, 288.01of NEBRC FDNY Firefighter Diversity Program money from Chase Account # 725826598 to a JTBO Chase Account # 769706789 and embezzled these funds by forging at least ten (10) checks, (See the Affidavit of Donald Frangipani). (See also Defendant's Exhibit "6" which is a NEBRC Chase Bank Statement for account number 769706789 from December 19, 2007

5

through December 31, 2007 indicating that on December 19, 2007 a deposit of $70,000.00 was made to that account). As a matter of fact we also discovered that at least nine of the forged checks identified by Frangipani were negotiated on that account and that five (5) of the checks were dated February 19, 2008 and that the remaining four (4) checks were dated April 15, 2008. The forged checks are designated by Frangipani in his Affidavit as follows:

Q-3   Check Number   5066,   payable to   Arlene Carden,   check date   02/19/2008;

Q-4   Check Number   5067,   payable to   Arlene Carden,   check date   02/19/2008;

Q-5   Check Number   5068,   payable to   Arlene Carden,   check date   02/19/2008;

Q-6   Check Number   5069,   payable to   Arlene Carden,   check date   02/19/2008;

Q-7   Check Number   5070,   payable to   Arlene Carden,   check date   02/19/2008;

Q-8   Check Number   5096,   payable to   Arlene Carden,   check date   04/15/2008;

Q-9   Check Number   5097,   payable to   Arlene Carden,   check date   04/1512008;

Q-10  Check Number   5098,   payable to   Arlene Carden,   check date   04/15/2008; and

Q-11  Check Number   5099,   payable to   Arlene Carden,   check date   04/15/2008.

The fact that five checks were dated February 19, 2008 and made payable to Arlene Carden and that five other checks were dated April 15, 2008 and also made payable to Arlene Carden; in addition to the fact that Frangipani found that the checks were forged by Jude clearly indicates that Jude and Duren were engaged in a scheme to defraud NEBRC and the City of New York and that this scheme was concealed from the court as well as from the defendant during trial.

The recent discoveries after the conclusion has lead me to believe that both Duren and Jude were engaged in a fraudulent scheme to embezzle monies from NEBRC by fabricating false time sheets in Carden's name, then they would make checks payable to Carden which would then be endorsed and negotiated by Jude. This fraudulent scheme was not revealed at trial because it was hidden from the defense and the court through the perjured testimony of Jude and Duren. As a result a fraud was perpetrated upon the court and Seabrook was denied a fair trial.

More than the perjured testimony, there is also reasonable grounds to believe that the United States Attorney's office for the Southern District of New York knew that the Questioned checks and time sheets were forged by Duren and Jude because there are reasonable grounds to believe that the US Attorney's office had also interviewed Arlene Carden about the same questioned documents and discovered that the documents were forged. However, this entire

6

process was never disclosed to the defense; neither did they turn over any transcripts or notes of their Carden interview to the defense. It is clear that had the evidence been disclosed, such evidence could have been used to impeach both Duren and Jude during trial. However, Seabrook was denied the evidence and also a fair trial.

I further declare that, to the best of my knowledge and belief, the information herein is true, correct and complete.

WHEREFORE, it is respectfully requested that the defendant's motion for an order vacating his conviction pursuant to Rule 33 of the Federal Rules of Criminal Procedure be granted in all respects together with such other and further relief as the court deems proper.


*Oliver Seabrook*

Oliver Seabrook


STATE OF NEW YORK, COUNTY OF NEW YORK, ss:


On this 27th day of _February_, 2013, before me personally appeared Oliver Seabrook, to me known to be the person described in and who executed the foregoing Affidavit, and, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.


Notary Public

FITZMORE HARRIS
Notary Public, State of New York
No. 02HA5024949
Qualified in Bronx County
Commission Expires March 21, 20 14

Title (and Rank)

My commission expires March 21, 2014

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==================================X          10-cr-00087*(DAB)*

UNITED STATES OF AMERICA

   -Against-                                          **AFFIDAVIT OF**
                                              **DONALD FRANGIPANI**


LARRY SEABROOK,
              Defendant.
==================================X

STATE OF NEW YORK    )
                      ) ss:
COUNTY OF KINGS     )

    DONALD FRANGIPANI, being duly sworn, deposes and says:

    I am over the age of eighteen (18) years of age, my place of business is located in Brooklyn, New York and I am fully familiar with the facts and circumstances surrounding the instant motion for a new trial based on my own forensic investigation and examination of the questioned documents. I am a New York State licensed Private Investigator and also a Forensic Document Examiner.

    I am a member of the following organizations: American Board of Forensic Examiners, the International Association for Identification, New York State Division of the International Association for Identification (Board of Directors), Connecticut State Division of the International Association for Identification, New Jersey State Division of the International Association for Identification, New York State Criminal Defense Lawyers Association, Society of Professional Investigators and Licensed Detectives of the New York State. I have thirty-five (35) years of experience and my professional office is located at 7119 13th Avenue, Brooklyn, New York 11228. I have specialized training and experience that qualify me as an expert in handwriting identification and examination; and also in document identification and analysis. (See Exhibit #1, Professional Vitae of Donald Frangipani).

    I am presently engaged in a research project involving handwriting specimens of patients in nursing homes who suffer from Parkinson's Disease, Alzheimer's Disease, strokes and other neurological disorders.

    On October 9, 2012, I was retained by Larry B. Seabrook for the purpose of providing forensic examination of documents which consisted of negotiated checks and time sheets. These documents consisted of at least twenty-four (24) checks bearing the name of North East Bronx Redevelopment Corporation ("NEBRC") as payer; and also approximately thirteen time sheets which listed NEBRC as the employer and Arlene Carden as the employee. That set of documents is collectively referred to herein as ("questioned documents"). (Attached hereto as Exhibits 2-1 to 2-14 is the first set of questioned documents and attached hereto as Exhibits 3-1 to 3-15 are the questioned time sheets).

    After I was retained, Larry B. Seabrook, Oliver Seabrook and Carl L. Green surrendered photocopies of the aforementioned documents to my custody for my examination. I then sought and obtained known handwriting samples of Arlene Carden, Tyrone Mitch Duren (hereinafter "Duren") and Phelisha Jude for the purpose of handwriting comparison. Thus, my initial

examination of the questioned documents was based on side-by-side comparison of the questioned and known signatures, along with microscopic examination. The objective of this examination was to establish whether there are dissimilarities and/or similarities between known and questioned writings on the documents.

In addition, I conducted a further detailed examination of the writings with respect to the line quality, rhythm, letter construction, size, base-line, spacing, stroke structure, I-dots, T-bars and variation. Based on all of the aforementioned information obtained, a determination is made as to whether a conclusion can be drawn. Of the first seventeen (17) documents I examined, one (1) document was a previously negotiated check was made payable to Duren, thirteen (13) of those documents were previously negotiated checks made payable to Arlene Carden, one document was an invoice submitted to NEBRC by Arlene Carden and two documents were time sheets submitted to NEBRC allegedly by Arlene Carden.

The first seventeen documents I examined are summarized in tabulated form and are displayed below as Table 1.[1]

Tale 1 Photocopies of Questioned Documents.

| Questioned Documents Designation | Payer | Check No | Payee | Document Date | Alleged Endorser |
|---|---|---|---|---|---|
| Q-1 | Northeast Bronx Redevelopment Corp | 5060 | Tyrone Duren | 12/31/2007 | Tyrone M. Duren |
| Q-2 | Northeast Bronx Redevelopment Corp | 1066 | Tyrone Mitchell Duren | 10/4/2006 | Tyrone Mitch Duren |
| Q-3 | Northeast Bronx Redevelopment Corp | 5066 | Arlene Carden | 02/19/2008 | Arlene Carden Duren |
| Q-4 | Northeast Bronx Redevelopment Corp | 5067 | Arlene Carden | 02/19/2008 | Arlene Carden Duren |
| Q-5 | Northeast Bronx Redevelopment Corp | 5068 | Arlene Carden | 02/19/2008 | Arlene Carden Duren |
| Q-6 | Northeast Bronx Redevelopment Corp | 5069 | Arlene Carden | 02/19/2008 | Arlene Carden Duren |
| Q-7 | Northeast Bronx Redevelopment Corp | 5070 | Arlene Carden | 02/19/2008 | Arlene Carden Duren |
| Q-8 | Northeast Bronx Redevelopment Corp | 5096 | Arlene Carden | 04/15/2008 | Arlene Carden Duren |
| Q-9 | Northeast Bronx Redevelopment Corp | 5097 | Arlene Carden | 04/15/2008 | Arlene Carden Duren |

[1]The Letter "Q" followed by numbers designate the questioned documents.

| Q-10 | Northeast Bronx Redevelopment Corp | 5098 | Arlene Carden | 04/15/2008 | Arlene Carden Duren |
| Q-11 | Northeast Bronx Redevelopment Corp | 5099 | Arlene Carden | 04/15/2008 | |
| Q-12 | Northeast Bronx Redevelopment Corp | 1025 | Arlene Carden | 6/28/2006 | |
| Q-13 | Northeast Bronx Redevelopment Corp | 1026 | Arlene Carden | 6/28/2006 | Arlene Carden |
| Q-14 | Northeast Bronx Redevelopment Corp | 1027 | Arlene Carden | 6/28/2006 | Arlene Carden |
| Q-15 | | Invoice | | 3/21/06 | Arlene Carden |

My Initial examination of the first set of documents was based on side-by-side comparison of the questioned and known signatures, along with a microscopic examination. The objective of this examination was to establish whether there are dissimilarities and/or similarities between known and questioned writing. In addition, the writings were further examined in detail regarding the line quality, rhythm, letter construction, size, speed, base-line, spacing, stroke structure, I-dots, t-bars and variation. Based on all of the aforementioned information obtained, a determination is made as to whether a reasonable conclusion can be drawn.

After a careful examination of the first set of documents, it is my professional opinion within a reasonable degree of forensic certainty that:

a) Arlene Carden is "eliminated" as author of all the questioned documents.

b) It is highly probable[2] that Tyrone M. Duren endorsed Exhibit Q-1 & Q-2.

c) It is highly probable that Philesha Jude endorsed Exhibit Q-4, Q-5, Q-6, Q-7, Q-8, Q-9, Q-10, Q-11, Q-12 (entire check), Q-13 (entire check), Q-14 (entire sheet), Q-15 and Q-16 (time sheet).

In order to further this examination, it is necessary to have Philesha Jude and Tyrone Duren write the names Gloria Jones Grant and Roger Witherspoon.

---

[2] 'Highly probable - the evidence is very persuasive, yet some critical feature or quality is missing so that a definitive identification is not in order; however, the examiner is virtually certain that the questioned and known writings were not written by the same individual. American Society for Testing and Materials, Standard Terminology for Expressing Conclusions of Forensic Documents. Designation E 1658-96. Volume 14.02 pages 1055, 1056, 1997 Annual Book of ASTM.

# A296

These findings expressed in this report are qualified due to the fact that all of the documents surrendered for examination (both the known and questioned documents) were photocopies of the original documents. The undersigned is obligated to recommend submission of original documents for examination.

These findings are predicated on the examination of photo reproductions which are susceptible to manipulation (tracing, cut and paste). Pen pressure, pen stop and type of writing instrument cannot be observed. Thus, it is necessary to examine the original documents.

This examiner adheres to the reporting standards of the American Society of Testing and Materials (ASTM) All opinions are within a reasonable degree of professional and forensic certainty.

Table 2: Questioned Time Sheets

| Questioned Documents Designation | Employer | Employee | Time Sheet Dates |
|---|---|---|---|
| Q-16 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 3/14/06 to 3/16/06 |
| Q-17 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 3/7/06 to 3/9/06 |
| Q-18 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 1/17/06 to 1/21/06 |
| Q-19 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 1/2/06 to 1/28/06 |
| Q-20 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 1/31/06 to 2/4/06 |
| Q-21 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/7/06 to 2/11/06 |
| Q-22 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/14/06 to 2/18/06 |
| Q-23 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/21/06 to 2/23/06 |
| Q-24 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 1/27/06 to 1/30/06 |
| Q-25 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/21/06 to 2/23/06 |
| Q-26 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/7/06 to 2/9/06 |
| Q-27 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/14/06 to 2/16/06 |
| Q-28 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/21/06 to 2/23/06 |
| Q-29 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 2/27/06 to 3/1/06 |
| Q-30 | Northeast Bronx Redevelopment Corp. | Arlene Carden | 1/17/06 to 1/21/06 |

# A297

My Initial examination of these time sheets was based on side-by-side comparison of the questioned and known signatures, along with a microscopic further examination. The objective of this examination was to establish whether there are dissimilarities and or similarities between known and questioned writing. In addition, the writings are examined in detail regarding the line quality, rhythm, letter construction, size, speed, base-line, spacing, stroke structure, I-dots, t-bars and variation. Based on all of the aforementioned information obtained, a determination is made as to whether reasonable conclusions can be drawn.

After a careful examination the following it is my professional opinion within a reasonable degree of forensic certainty that time sheets were not prepared by Arlene Carden. It is my further opinion that Tyrone M. Duren is also the author of time sheets identified as Q-19-Q-25.

This Examiner adheres to the procedures of the American Society for Testing and Materials, and Standard Terminology for Expressing Conclusions of Forensic Documents. Designation E 1658-96, Volume 14.02, pages 1055, 1056, 1997 Annual Book of ASTM.

I declare that, to the best of my knowledge and belief, the information herein is true, correct and complete.

_____
DONALD FRANGIPANI

STATE OF NEW YORK, COUNTY OF KINGS, ss:

On this 22nd day of February, 2013, before me personally appeared Donald Frangipani, to me known to be the person described in and who executed the foregoing Affidavit, and, being first duly sworn on oath according to law, deposes and says that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated herein are true to the best of his/her information, knowledge and belief.

_____
Notary Public

Notary Public
Title (and Rank)

My commission expires 5/22/14

RAQUEL RUTIGLIANO
NOTARY PUBLIC, State of New York
No. 01RU6146834
Qualified in Kings County
Commission Expires 5/22/20 14

# EXHIBIT 1

# A299

## DONALD FRANGIPANI
## Examiner of Questioned Documents

7119 13th Avenue ~ Brooklyn, NY 11228
Phone (718) 232-3209 ~ Fax (718) 234-3396

### CURRICULUM VITAE

1955-1958    United States Army - Honorable Discharge

### Last Military Assignment

U.S. Army Forensic and Second Field
Hospital, Germany

### Duties

Forensic Laboratory Technician
Colonel Michael Whelan/Captain Raymond
Biemacki (Supervisors)

### Specialized Training in Questioned Documents

Internship - Document Trainee under tutelage of
Professor Winternatel (University of Stuttgart - 16
months) and members of the GESELLSCHAFT
FORENSISCHE (GFS)/Association of Freelancing
Forensic Experts.

Training involved various aspects of questioned
document examination. Structured reading of text-
books and existing professional papers. Research
projects and completing numerous practical exercises.

Topics studied during training included; examination
and identification of handwriting; hand-printed numbers,
typewriting, stamp impressions, photocopies, paper, inks
and writing instruments, detection of erasures, alterations,
decipherment of erased, obliterated text, penmanship system
and latent fingerprint development.

### Additional Training

United States Army Photography and Projectional School-
Munich, Germany.

1

| | |
|---|---|
| 1959-1961 | Columbus University College of Physicians and Surgeons (recommended by Col. Michael Whalen - U.S. Army) |

**Duties**

Pathology and Neurology technician.

While employed in this capacity, I continued my studies in handwritten identification. I was engaged in a research program which consisted of handwriting studies on patients with various neurological disorders (e.g. Parkinson's disease motor disorders, multiple sclerosis and brain tumors). This research was to establish the effect of handwriting prior, during and after these problems.

Further research was conducted in both the pre and post operative stages of lobotomy's, trauma and other neurological surgery procedures. Other research studied was the psycho-physiological effects of handwriting (e.g. shock, fear, mood, drugs and alcohol).

| | |
|---|---|
| 1963-1973 | Employed as an Investigator/Security with various investigative services. Continued study in the field of questioned documents. |
| 1975 | Licensed as a New York State Private Investigator. Founded, All City Investigations and Forensic Services, Inc. |
| 1977-1981 | Associated with Vincent J. Scalice, retired Detective N.Y.P.D. Continued study in questioned document examination; forensic photography and latent fingerprint examination with Vincent Scalice. |
| 1988-1993 | Studied under the tutelage of Felix Klein (Manhattan Handwriting Institute). |

I continue to study and research in the field of questioned documents and handwriting identification and keeping abreast of periodicals, books and literature published by experts and agency's authority. I have visited government and private questioned document laboratories to observe techniques and procedures. I retained a complete library of texts on handwriting and questioned documents. I attend numerous training conferences.

| | |
|---|---|
| 1994-present | Associated with Christopher L. Morales formerly a document examiner with the United States Secret Service/Adjunct Faculty Members, The George Washington University. |

2

### Professional Courses, Seminars and Workshops Attended

1968      Society of Medical Jurisprudence/Lenox Hill Hospital.
Writers health in detecting forgery and identifying signatures. Ordway Hilton, Speaker.

**August, 1986    International Association For Identification**

    a) Study of mental aptitude while writing under stress

    b) Use of Video Spectral Comparator (Lt. Josey, Escambia Sheriff's Office)

    c) Questioned Document Photography (S.A. Sanders, U.S.)

    d) Signature Workshop

    e) Counterfeit and altered credit card (Darryll Marshall, Pompano Beach P.D.)

**April 1, 1987    Tri-State Legal Photographers**
(Questioned Document Photography - Peter Tytel)

**Topics**

Indented writing, watermarks, seals, rubber stamps, bisecting lines, charred documents, chart preparation and use of transparencies and over-lays.

**January, 1989    Valencia Community College/Orlando, Florida
Ronald M. Dick - Instructor**

**Topics**

    a) Introduction to the Field of Questioned Documents

    b) Conducting the examination of handwriting and hand-printing

    c) Examination of signatures

    d) Examination of typewriter material

    e) Acquisition of special material

    f) Miscellaneous document problems

    g) Legal aspects of questioned documents

    h) Handwriting systems

    i) Acquisition of exemplars

3

# A302

| | |
|---|---|
| May, 1989 | **Evidence Photographers & Tri-State Legal Photography Seminar** |
| | Close-up Photography of Demonstrative Evidence |
| | Larry Shavelson |
| May, 1990 | Advanced Latent Fingerprint Techniques |
| | FBI SA Tim Trozzi/Felix Bigor |
| | Kodak Photography/Fingerprint Techniques |
| | Latent Fingerprint Workshop |
| May 7, 1991 | Polaroid School of Law Enforcement Imaging - Imaging Application |
| June 7-10 1991 | **Conference of the International Association For Identification Fallsview, NY** |

a) Latent Fingerprint Workshop
   Kenneth Zerchie - Connecticut State Police

b) Forensic Photography
   Luther Dey - Rochester Institute of Technology

| | |
|---|---|
| July, 1991 | **International Association for Identification (76th Annual Education Conference)** |

Questioned Document Section Program

a) Typewritten Examination
   Supervisory Special Agent David W. Attenburger
   (Federal Bureau of Investigation)

b) Signature Workshop
   Deputy Sheriff Don Fandry
   (Questioned Document Examiner/Los Angeles County
   Sheriff's Department)

c) "The Relationship Between Disguised Handwriting and
   Years of Formal Education"

d) "Death of the Depressed Writer"
   "Fraud of a Checking Account"
   "Identification of the Altered Number"
   "Questioned Document Examination Manual for Investigators
   (Marvin Morgan Q.D. - San Antonio, Texas)

4

June, 1992     **International Association for Identification
(77th Annual Education Conference)**

**Questioned Document Section Program**

a) Document Diamonds - Sidney Goldblatt

b) Tagger Graffiti - Don Fandry

c) Automated Handwriting Identification - Don Fandry

d) Document Dating by Ink Analysis - John Hargett

e) Signature Comparison Workshop - Don Fandry

f) Alternate Light/Digital Imaging Enhancement Photography

g) Preparation of Court Charts

Dec. 1992     Handwriting Identification and Obtaining Handwriting Exemplars
(William Duane - Connecticut State Police)

Oct. 1993     **New Jersey Association (I.A.I.)**

Handwriting and Questioned Document examination for Law
Enforcement personnel
(Lt. Glenn Owens - Essex County, N.J.)

April 19, 20
21, 1994     **38th Annual Tri-State Educational (I.A.I.) Conference,
Atlantic City, New Jersey**

Latent Fingerprint Techniques - Mitchell Hollars, FBI

3M Fingerprint Visualization Systems - David Weaver

P.C. Based Fingerprint Matching - Det. Roger Brooks, Danbury P.D.

Sept. 1994     **National Academy of Forensic Examiners,
Branson, Missouri**

Disguised Writing, Longitudinal Case Study of a Heart Attack via
Pre-Juncture Post Hand Writing Specimens, Arabian Writing
Identification, Report Writing, Light Energy For law Enforcement,
Questioned Document Examination, Pen Computing and Digital
Signatures, and Opinions: Letters of Opinion and Reasons Why.

# A304

April 2-5, 1995   **Saratoga NY 39th Annual NY State Conference**

      a) Evidence Photography - Polaroid Corp.

      b) Palm Print Examination - Ron Smith

      c) Fingerprint Developing Workshop - John Olenik

      d) Behavior Profiling - Lt. J. Edward Grant

March 24-27,   **Tri-State 40th Annual Educational Conference**
1996

      Use of Alternate Light Source

      SPEX Forensic Instruments

April 30, 1996   **Tri-State Legal Photographers**

      a) Photography and Demonstrative Evidence
         Stephen Wheeler Esq.

      b) Photography and Demonstrative Evidence
         Larry Shavelson/Close-up photography

      c) Documentation of Imprint and Impression Evidence
         Kenneth Zerchie/Connecticut State Police

      d) Footwear Examination Workshop
         Ernest Hamm/Florida P.D.

May 17-18,   42nd Annual Tri-State Identification Conference, (I.A.I.)
1998   Albany, New York

      Technology Advance in Latent Fingerprint Technology/Dan Foro, D.C.J.S

      Digital Imaging/Ronald Martino/Rochester Institute of Technology.

May 20-23,   **Tri-State 45th Annual Educational Conference I.A.I.**
2001   **Suffern, New York**

      Digital Imaging; PC Pro's - David Witzke

      Questioned Document Case Review
      Herbert McDonell/Laboratory of Forensic Science

      Examination of forged test papers (Austin case).

Examination of ink, paper and typewriter utilized to forge a
Last Will and Testament.

Examination of knife cutting marks in paper reams.

## Professional Associations

American Board of Forensic Examiners

International Association for Identification

New York State Division of the International
Association for Identification (Board of Directors)

Connecticut State Division of the International
Association for Identification

New Jersey State Division of the International
Association for Identification

New York State Criminal Defense Lawyers Association

Society of Professional Investigators

Licensed Detectives of the New York State

I am presently engaged in a research project involving handwriting
specimens of patients in nursing homes who suffer from Parkinson's
Disease, Alzheimer's Disease, strokes and other neurological disorders.

## Publications

Written and published an article "The Exemplar" a journal
published by the National Bureau of Document Examiners,
entitled "Restoration and Decipherment of Obliterated
Documents", 1990.

## Reference Library

Numerous books, journals, periodicals, and articles authored
by experts in the field of Questioned Documents, including
Secret Service, F.B.I., Police Departments, autograph books,
and various signature specimens of various sports figures and
people of notoriety.

I have testified and qualified as a Questioned Document Examiner
in Federal, State and Civil Courts in New York, New Jersey and
Kingston, Jamaica. I have testified in numerous hearings,
arbitration's and Grand Juries.

7

# A306

<u>Present Employment</u>

President/Director - ALL CITY INVESTIGATIONS & FORENSIC SERVICES, INC.

New York State Private Investigator Lic. #24629

Appointed as Commissioner of Deeds #22690

## REFERENCES UPON REQUEST

8

# EXHIBIT 2

# A308

NORTH EAST BRONX REDEVELOPMENT CORP.
36878 WHITE PLAINS RD.
BRONX, NY 10467

1025

DATE 6/28/06

PAY TO THE ORDER OF Arlene CARDEN $ 623.61

Six Hundred and Twenty-Three 61/100 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR Reimburse

⑆0010 25⑆ ⑈0 2 10000 2 1⑈ 09 10 7 2 84 7065⑆ ⑆00000 6 23 61⑆

AcctNum: 000000091072247065  Amount: 00000000623061
Serno: 000001025  PostDate: 20060629  Sequence: 008600554858
BankNum: 0802  AppCode: 0002  Field4: 0000  ImageStat: 05
IRD: 0802008260608600554858  BOFD: 021000021  CapSrc: PO
TranCode: 000000  RouteTran: 02100002  DocType: 0
EntryNum: 2844  ItemType: P

Arlene Carden

# A309

NORTH EAST BRONX REDEVELOPMENT CORP.
3087B WHITE PLAINS RD
BRONX, NY 10467

1026

DATE 6/28/06

PAY TO THE ORDER OF ARLENE CARDEN                    $ 623.61

Six hundred and twenty three 61/100 ——— DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR reimburse

AcctNum: 000000091072247065  Amount: 000000000062361
Serno: 00001026  PostDate: 20060706  Sequence: 008800484921
BankNum: 0002  Seq16: 00084  ImageStat: 005
UDK: 080208700800800484921  RoutN: 02100002d  CapSEC: PO
TracCode: 00000  RoutoTran: 02100002  DocType: 8
EntryNum: 2739  ItemType: P

2-2

# A310

NORTH EAST BRONX REDEVELOPMENT CORP.
3687B WHITE PLAINS RD.
BRONX, NY 10467

1027

DATE 6/28/06

PAY TO THE ORDER OF _ARLENE CARDEN_ _ $ 1247.22_

_One thousand, two hundred and forty-seven_ 20/100 DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR _____

⑈0010 27⑈  ⑆021000021⑆091072 24706 5⑈  ⑈0000 124722⑈

8170044915

AcctNum: 000000091072247065  Amount: 000000000124722
Seqno: 0008001  PostDate: 20060710  Sequence: 008100044915
BankNum: 0802  AppCode: 0802  Field4: 0008  ImageStat: 15
MICR: 08020802100010004915  BOFD: 021000021  CapSrc: PO
TranCode: 000000  RouteTran:  02100002  DocType: 8
EntryNum: 2662  ItemType: P

2-3

# A311

NORTHEAST BRONX REDEVELOPMENT 7M89-000100
CORP
1330 E 223ND ST
BRONX,NY  10469

1-0032
210

12/31/2007

5060

208034

PAY TO THE
ORDER OF

TYRONE QUEEN
171 PEARSALL DRIVE
MOUNT VERNON NY  10552

$ ******1005.44**

**********************ONE THOUSAND FIVE AND 44/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10012

*Gloria Jones-Grant*

⑈005060⑈ ⑆021000021⑈ 769706789⑈  ⑆0000100544⑈

0361513992

099 3-    BANCO POPULAR 9071934456<
          CHICAGO, IL (888)508-9712
8007258780 12/31/2007 0000006599151603 035

8670525186

AcctNum: 000000000769706789  Amount: 000000001100544
SerNum: 0000005060 PostDate: 20080102 Sequence: 000670525186
BankNum: 0071934456 Field4: 000044 ImageSeq: 1
UBPK: 000208034 DBPK: 8670525186 Teller: 000000000 CashBx: 00
TranCode: 000000 RouterTran: 02100002  DocType: 0
EntryNum: 1121 ItemType: P

2-4

# A312

NORTHEAST BRONX REDEVELOPMENT 2489-000100
CORP
1530 E 222ND ST
BRONX,NY 10469

1-0092
210

02/19/2008

5066

1749

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ *******1028.72**

********************************ONE THOUSAND TWENTY-EIGHT AND 72/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10017

Gloria Jones-Grant

⑈005066⑈ ⑆021000021⑆ 769706785⑈     ⑈000010 2872⑈

0383509727

452401274S

FEB 21 2008

Arlene Carden Dixon

AcctNum: 000000000769706789  Amount: 0000000001028.72
Berno: 000005966 PostDate: 20080225 Sequence: 008706696799
Bank#: 0802 Checkseq: 008706696799 Serial#: 0000  ImageSeq: 05
Work: 08020802250000000000000000000 Capseq: PO
TranCode: 000000 Routetran: 021000002  DocType: B
EntryNum: 2648 ItemType: P

# A313

NORTHEAST BRONX REDEVELOPMENT
CORP
1530 E 222ND ST
BRONX, NY 10469

1.0002
210

02/19/2008    5067

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ *******1028.72**

*********************ONE THOUSAND TWENTY-EIGHT AND 72/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10012

*Gloria Jones-Grant*
AUTHORIZED SIGNATURE(S)

⑈005067⑈ ⑆021000021⑆ 769706789⑈

⓪ 0383509728

AcctNum: 000000000769706789  Amount: 000000000102072
Memo: 000005067  PostDate: 20080220  Sequence: 004270882711
MBR: 080208020  ImageSeq:  0004270882711  BoFD: 07909962  CapSrc: PO
TranCode: 000600  RouteTran: 021000002  DocType: B
EntryNum: 5476  ItemType: P

2-6

# A314

NORTHEAST BRONX REDEVELOPMENT
CORP
1530 E 222ND ST
BRONX, NY 10469

02/19/2008    6068

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ ******1028.72**

ONE THOUSAND TWENTY-EIGHT AND 72/100**DOLLARS

*Gloria Jones-Grant*

JP MORGAN CHASE BANK
NEW YORK, NY 10012

⑈005068⑈ ⑈021000021⑈ 769706789⑈

⑈ 0383509729

AcctNum: 000000000769706789 Amount: 000000000001028.72
Serno: 0000005068 PostDate: 20080420 Sequence: 0042770882710
Bank: 0802 0802 BankSeq: 0000442 ItemId: 0000 ImageSeq: 03
Tran: 0802 0802 BankSeq: 2710 770882710 079095752 CapSeq: 70
TranCode: 000000 RouteTran: 021000002 DocType: 0
EntryNum: 5476 ItemType: P

2-7

# A315

NORTHEAST BRONX REDEVELOPMENT, 2599.000100
LEAP
1530 E 222ND ST
BRONX, NY 10469

02/15/2008          5089

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ *******1028.72**

***ONE THOUSAND TWENTY-EIGHT AND 72/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10012

Gloria Jones-Grant

⑈005089⑈ ⑆021000021⑆ 764706784⑈

C 0383509730

Arlene Carden Ruos

AcctNum: 000000007697067089 Amount: 00000000102872
Vermn: 0000005089 PostDate: 20080220 Sequence: 004270882712
BankNum: 00828800799 AcctDay: 2008022 ImageSeq: 03
UDR: 0802088288299508001 Field44_0000 07_0000
TranCode: 500000 RouteTran: 02100002 DocType: 0
EntryNum: 5476 ItemType: D

2-8

# A316

NORTHEAST BRONX REDEVELOPMENT 2M09-003100
CORP
1530 E 222ND ST
BRONX, NY 10469

1-0002
210

02/13/2008   5070

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ *******1028.72**

*EVE THOUSAND TWENTY-EIGHT AND 72/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10017

Gloria Jones-Grant

⑆005070⑆ ⑈021000021⑈ 769706789⑆

0383503731

AcctNum: 000000000769706789 Amount: 000000000102872
Serno: 00000005070 PostDate: 20080520 Sequence: 006370280850
BankNum: 000000 Field44: 000000 TradeSeq: 01
DDK: 08020802200006370280850 BOFD: 000000000 CapSBC: RO
TranCode: 000000 RouteTran: 02100002 DocType: 8
EntryNum: 3809 ItemType: P

2-9

# A317

NORTHEAST-BRONX REDEVELOPMENT
CORP
3530 E 222ND ST
BRONX,NY 10459

01/15/2009          5096

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ ********713.65**

**********************SEVEN HUNDRED THIRTEEN AND 65/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10012

*005096* :021000021: 769706789*

0412160017

AcctNum: 00000000769706789  Amount: 000000071365
Item: 000005096  ProcDate: 20090118  Sequence: 006510613925
Bank: 0002  AppCode: 001  Field4: 006510613925  ImageSeq:
UDK: 00020021800031061392500  Rsn: 000000000  CapSeq: PY
TranCode: 000000 RouteTran: 02100002  DocType: 8
EntryNum: 3771 ItemType: 0

# A318

NORTHEAST BRONX REDEVELOPMENT 2M87-050108
CORP
3330 E 222ND ST
BRONX, NY 10469

1-0002   05/15/2008   5097
210

PAY TO THE
ORDER OF

ARLENE CARDEN
345 BRONX RIVER RD
YONKERS NY 10704

$ *******713.65**

SEVEN HUNDRED THIRTEEN AND 65/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10012

Gloria Jones-Grant

⑆005097⑆ ⑈021000021⑈ 769706789⑈        ⑆0000071365⑆

0412160018

REDU DOGS   PK: 1

869   2008   51
04173608
470793652
567073442

OcctNum: 00000000769706789 Amount: 000000000071365
Germln: 0000005097 PostDate: 20080417 Sequence: 000870737442
BankLog: 08014P768298x5011 BatchSeq: 005 ImageStat: 04
MICR: U802088149P768298x023442 BOFD: 000000000 CapSeq: 90
TranCode: 000000 RouteTran: 021000021 DocType: B
EntryNum: 2008 ItemType: B

2-11

# A319

# A320

NORTHEAST BRONX REDEVELOPMENT 2439-008103
CORP
1530 E 222ND ST
BRONX NY 10467

1-0002        04/16/2008        5099
210              DATE            CHECK NO.

PAY TO THE
ORDER OF        ARLENE CARDEN
                345 BRONX RIVER RD
                YONKERS NY 10704

$ ******713.65**

*******SEVEN HUNDRED THIRTEEN AND 65/100**DOLLARS

JP MORGAN CHASE BANK
NEW YORK, NY 10017

Gloria Jones-Giant

⑆005099⑆ ⑉021000021⑊ 769706789⑈        ⑆000007⑅365⑇

0412160020

8670737444

AcctNum: B000000007697606789  Amount: 0000000007136.65
Serno: 000005099  PostDate: 20080417  Sequence: 008670737444
BankNum: JB020801  R0002998  Field-04  ImageSeq: 75
HDR: JB020801 R8670737444  R0000002  CapSrc: 95
TranCode: 00000  RouteTran: 02100002  DocType: 8
EntryNum: 2008  ItemType: P

2-13

# A321

04/22/2006  17:24   718-547-1973          SUNY NBCCDC                    PAGE  03

| **Arlene Carden**<br>Consulting<br>~45 Bronx River Road<br>Yonkers, New York 10704<br>SS# 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 | **INVOICE** |
|---|---|
| | INVOICE # |
| | DATE OF SERVICE : |

| **To:**<br><br>**Northeast Bronx Redevelopment Corp.**<br>3687 B White Plains Road<br>Bronx, New York 10467<br>Phone (718) 944-3734<br>FAX (718) 944-6589 | **FOR:**<br>Job Readiness Instructor |
|---|---|

| DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|
| Resume Preparation | | | |
| Resume Development | 15 HRS | $25 hr | $375 |
| Resume Objective Sentences | | | |
| Jock History Development | 15 HRS | $25 hr | $375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL | |

/ment: $750.00        Date: 3/21/06       Signature: Arlene Carden

**Please submit this form with bi-monthly time sheet.**

2-14

# EXHIBIT 3

# A323

# Northeast Bronx Redevelopment Corp.

3687 White Plains Rd.    Out is one ck
Bronx, NY 10467
(718) 244-3754           .....come se?

Pay period start date: 1/17/06
Pay period end date: 1/21/06

Employee: Arlene Carden
Manager: Philesha Jude

Employee phone: (914) 249-6854
Employee e-mail: arlene-duren@ mastercard.com

SS# 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

| Day | Regular Hours | Sick | Total | Initial Here |
|---|---|---|---|---|
| Monday | | | | |
| Tuesday | 1/17/06 6-9 | | 3.0 | A.c. |
| Wednesday | 1/18/06 6-9 | | 3.0 | A.c. |
| Thursday | 1/19/06 6-9 | | 3.0 | A.c |
| Friday | | | | |
| Saturday | 1/21/06 9-12 | | 3.0 | A.c. |
| Sunday | | | | |
| Monday | | | | |
| Tuesday | | | | |
| Wednesday | | | | |
| Thursday | | | | |
| Friday | | | | |
| Saturday | | | | |
| Sunday | | | | |
| Total hours: | 12 | | | |
| Rate per hour: | $139.00 | | | |
| Total pay: | $1668 | | | |

arlene Carden
Employee signature

Manager signature

3-1

# A324

# Northeast Bronx Redevelopment Corp.

White Plains Rd.

Bronx, NY 10467

P 718-944-3754

Pay period start date: 1/17/06

Pay period end date: 1/21/06

Employee: Arlene Carden

Manager: Philesha Jude

Employee phone: (914) 249-6854

Employee e-mail: arlene — duren @ mastercard . com

SS# 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

| Day | | Regular Hours | Sick | Total | Initial Here |
|---|---|---|---|---|---|
| Monday | | | | | |
| Tuesday | 1/17/06 | 6 - 9 | | 3.0 | A.C. |
| Wednesday | 1/18/06 | 6 - 9 | | 3.0 | A.C. |
| Thursday | 1/19/06 | 6 - 9 | | 3.0 | A.C. |
| Friday | | | | | |
| Saturday | 1/21/06 | 9 - 12 | | 3.0 | A.C. |
| Sunday | | | | | |
| Monday | | | | | |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| Total hours | 12 | | | | |
| Rate per hour | $139.00 | | | | |
| Total pay | $1668 | | | | |

Arlene Carden

Employee signature

Manager signature



3-2

# A325

# Northeast Bronx Redevelopment Corp.

3687 White Plains Rd.
Bronx, NY 10467
(718) 944-3734

Pay period start date: 1/24/06
Pay period end date: 1/28/06

Employee: Arlene Carden
Manager: Philesha Jude

Employee phone (914) 249-6854
Employee e-mail: arlene_duren @ mastercard-com

| Day | | Regular Hours | Sick | Total | Initials |
|---|---|---|---|---|---|
| Monday | | | | | |
| Tuesday | 1/24/06 | 6-9 | | 3 hrs | A.C. |
| Wednesday | 1/25/06 | 6-9 | | 3 hrs | A.C. |
| Thursday | 1/26/06 | 6-9 | | 3 hrs | A.C. |
| Friday | | | | | |
| Saturday | 1/28/06 | 9-12 | | 3 hrs | A.C. |
| Sunday | | | | | |
| Monday | | | | | |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| Total hours | | 12 | | | |
| Rate per hour | | $139 | | | |
| Total pay | | $1668 | | | |

Arlene Carden
Employee signature

Manager signature

3-3

# Northeast Bronx Redevelopment Corp.

1/27/06

1/30/06

Employee: Arlene Carden   (914) 249-6854

Manager: Philesha Jude   arlene — dutta(a)

mastercard — com

| Day | | Regular Hours | Sick | Total | Initial Here |
|-----|-----|-----|-----|-----|-----|
| Monday | | | | | |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | 1/27/06 | 6-9 | | 3.0 | A.C. |
| Saturday | 1/28/06 | 9-12 | | 3.0 | A.C. |
| Sunday | | | | | |
| Monday | 1/30/06 | 6-9 | | 3.0 | A.C. |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| | Total hours | 9 hrs | | | |
| | Rate per hour | $60.00 | | | |
| | Total pay | $540 | | | |

Arlene Carden



3-4

# Northeast Bronx Redevelopment Corp.

2/1/06

2/4/06

Arlene Carden          (914) 249-6254

Philesha Jude          arlene_duva @

mastercard.com

| Day | | Regular Hours | Sick | | Total | | Initial Here |
|-----|-----|-----|-----|-----|-----|-----|-----|
| Monday | | | | | | | |
| Tuesday | | | | | | | |
| Wednesday | 2/1/06 | 6-9 | | | 3.0 | | A.C. |
| Thursday | 2/2/06 | 6-9 | | | 3.0 | | A.C. |
| Friday | | | | | | | |
| Saturday | 2/4/06 | 9-12 | | | 3.0 | | A.C. |
| Sunday | | | | | | | |
| Monday | | | | | | | |
| Tuesday | | | | | | | |
| Wednesday | | | | | | | |
| Thursday | | | | | | | |
| Friday | | | | | | | |
| Saturday | | | | | | | |
| Sunday | | | | | | | |
| Total hours | | 9 | | | | | |
| Rate per hour | | $60.00 | | | | | |
| Total pay | | $540 | | | | | |

Arlene Carden



# A328

# Northeast Bronx Redevelopment Corp.

3937 White Plains Rd.  Outreach

Bronx, NY 10467  to

(718) 244-3734  Committed

Pay period start date: 1/31/06
Pay period end date: 2/4/06

Employee: Arlene Carden
Manager: Philesha Jude

Employee phone: (914) 249-6854
Employee e-mail: arlene_duran @ mastercard-com

| Day | | Regular Hours | Sick | | Total | | Initial Here |
|-----|--|--------------|------|--|-------|--|--------------|
| Monday | | | | | | | |
| Tuesday | 1/31/06 | 6-9 | | | 3.0 | | A.C. |
| Wednesday | 2/1/06 | 6-9 | | | 3.0 | | A.C. |
| Thursday | 2/2/06 | 6-9 | | | 3.0 | | A.C |
| Friday | | | | | | | |
| Saturday | 2/4/06 | 9-12 | | | 3.0 | | A.C. |
| Sunday | | | | | | | |
| Monday | | | | | | | |
| Tuesday | | | | | | | |
| Wednesday | | | | | | | |
| Thursday | | | | | | | |
| Friday | | | | | | | |
| Saturday | | | | | | | |
| Sunday | | | | | | | |
| Total hours | | 12 | | | | | |
| Rate per hour | | $139.00 | | | | | |
| Total pay | | $1668 | | | | | |

Arlene Carden
Employee signature

_____
Manager signature

3-6

# Northeast Bronx Redevelopment Corp.

Pay period start date  2|7|06
Pay period end date  2|9|06

Employee:  Arlene Carden
Manager:  Philesha Jude

Employee phone: (91 M 249 - 6754
Employee email: arlene—duren@
mastercard.com

| Day | | | Regular Hours | Sick | Total | Initial Here |
|-----|---|---|-------|------|-------|-------------|
| Monday | | | | | | |
| Tuesday | 2\|7\|06 | | 6 – 9 | | | |
| Wednesday | 2\|8\|06 | | 6 – 9 | | | |
| Thursday | | | | | | |
| Friday | | | | | | |
| Saturday | 2\|9\|06 | | 9 – 12 | | | |
| Sunday | | | | | | |
| Monday | | | | | | |
| Tuesday | | | | | | |
| Wednesday | | | | | | |
| Thursday | | | | | | |
| Friday | | | | | | |
| Saturday | | | | | | |
| Sunday | | | | | | |
| Total hours | 9 hrs | | | | | |
| Rate per hour | $60.00 | | | | | |
| Total pay | $540 | | | | | |

Arlene Carden
Employee Signature


Q2b

# A330

# Northeast Bronx Redevelopment Corp.

2037 White Plains Rd.
Bronx, NY 10467
(718) 944-3734

Pay period start date: 2|7|06
Pay period end date: 2|11|06

Employee: _Arlene Carden_
Manager: Philesha Jude

Employee phone: (914) 249 - 6854
Employee e-mail: arlene~duren@ mastercard.com

| Day | Regular Hours | Sick | Total | Initial here |
|-----|---------------|------|-------|--------------|
| Monday | | | | |
| Tuesday | 2|7|06 | | 3.0 | A.C. |
| Wednesday | 2|8|06 | | 3.0 | A.C. |
| Thursday | 2|9|06 | | 3.0 | A.C. |
| Friday | | | | |
| Saturday | 2|11|06 | | 3.0 | A.C |
| Sunday | | | | |
| Monday | | | | |
| Tuesday | | | | |
| Wednesday | | | | |
| Thursday | | | | |
| Friday | | | | |
| Saturday | | | | |
| Sunday | | | | |
| Total Hours | 12 hrs | | | |
| Rate per hour | $139.00 | | | |
| Total pay | $1668 | | | |

_Arlene Carden_
Employee signature

_____
Manager signature

3-8

# Northeast Bronx Redevelopment Corp.

Employee: Arlene Carden
Manager: Philesha Jude

Pay period start date: 2/14/06
Pay period end date: 2/16/06

Telephone number: (914) 239-6854
Email: arlene-ducen@mastercard.com

| Day | | Regular Hours | Sick | Total | Initial Here |
|---|---|---|---|---|---|
| Monday | | | | | |
| Tuesday | 2/14/06 | 6-9 | | 3.0 | A.C |
| Wednesday | 2/15/06 | 6-9 | | 3.0 | A.C |
| Thursday | 2/16/06 | 6-9 | | 3.0 | A.C |
| Friday | | | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| Monday | | | | | |
| Tuesday | | | | | |
| Wednesday | | | | | |
| Thursday | | | | | |
| Friday | | | | | |
| Saturday | | | | | |
| Sunday | | | | | |
| Total hours | | 9 hrs | | 9 hrs | |
| Rate per hour | | $60.00 | | | |
| Total pay | | $540 | | | |

Arlene Carden

